## McCREARY & BARLOW v. R. T. GAINES.

(Case No. 4257.)

1. PRINCIPAL AND FACTOR.— At common law, the simple facts of possession and power of sale are not sufficient *indicia* of ownership in a factor to authorize a third person to take the property so held in pledge for the debt of the factor. This rule has not been changed in Texas by statute. If the protection of those who deal with factors requires the adoption of a different rule, as has been done in most of the states, it is the province of the legislature and not of the courts to effect the change.

APPEAL from Tarrant. Tried below before the Hon. A. J. Hood.

The opinion states the case.

*Mabry & Carter*, for appellants.

I. A factor cannot pledge the goods of his principal generally, but if the principal arms him with such *indicia* of property as enable him to deal with it as his own, the courts will sustain such a pledge in favor of the pledgee, who has been deceived by the conduct of the owner and his agent. See 2 Kent, p. 815, note 2; Boyson *v.* Coles, 6 Maule & Selw., 14; note 5, sec. 113, Story on Agency; Pultney *v.* Kyner, 3 Esp., 182; Pickering *v.* Busk, 15 East, 44; 1 Bell's Com., sec. 412; Paley on Agency, by Lloyd (4th ed.), pp. 219–233; sec. 325, Story on Bailments, and notes 3 and 4; sec. 328, and authorities.

*John D. Templeton*, for appellee.

STAYTON, ASSOCIATE JUSTICE.— This suit was brought by the appellee against the appellants to recover one piano and three organs, or their value.

Plaintiff alleged that he had placed the property sued for with Henry Miller, for sale upon commission, and that he was advised that Miller had pledged the same to appellants to secure the payment of a sum of money borrowed by Miller from the appellants, for his own use;

and he further. alleged that at the same time, Miller, for the same purpose, pledged to appellants property of his own of a like kind as that sued for, which was of value sufficient to fully satisfy the debt due from Miller to appellants.

He further alleged, upon information, that the sum borrowed from appellants was $600, and that the property of Miller pledged therefor was of the value of $2,715; and prayed in the event the property of himself was in any manner found liable for the debt due from Miller to appellants, that the property owned by Miller be first subjected to the payment of that debt.

The appellants pleaded a general denial, and that they purchased the property sued for in ignorance of the fact that the appellee was the owner thereof, from Miller, for a valuable consideration paid, believing Miller to be the owner thereof. They did not allege the pledge nor set out the loan of money.

After the appellants had fully answered, they filed what was denominated by them a "supplemental answer," which consisted of special exceptions to the petitions of appellee, which, upon motion, was stricken out because not filed in due order of pleading. In this there was no error, for the appellants had already answered by a general demurrer and to the merits, and their special exceptions were not filed in due order of pleading; besides, it is not seen that the exceptions could have been sustained if they had been filed at the proper time.

The evidence showed that Miller was a dealer in musical instruments such as are sued for; that he lived and did business in Fort Worth, Texas; that he received from the appellee, who resided in Dallas, Texas, the piano and organs sued for, under an agreement to sell them for him upon commission at prices named, and that the property when received was by Miller put in his store at Fort Worth, among other goods of his own of a like charac-

ter, for sale in the ordinary course of business. There was no controversy as to the ownership of the property being in the appellee at the time the same was delivered to Miller for sale.

The evidence further showed, that after Miller received the property he borrowed money from the appellants — how much does not appear; and that to secure the payment of the same, he pledged to them the property of the appellee, and also property of a like character which belonged to himself; the nature of the latter did not appear.

There was no evidence showing that the appellants knew that the property sued for belonged to the appellee, nor that they made inquiry in regard thereto. The money borrowed by Miller from the appellants had not been paid.

The cause was tried without a jury, and a judgment rendered for the appellee for the instruments or their value, the separate value of three of the instruments being determined, and the aggregate value of all, by the judgment.

The second assignment of error is that "the court erred in not rendering judgment for the appellants."

The proposition under this assignment is, in effect, that Miller under the facts was authorized to pledge the property of his principal, and this is the main question in the case.

How far the court may have been influenced in rendering the judgment by the fact that no inquiry was made by the appellants as to the true ownership of the property, we are uninformed; but under the facts of the case, it was more incumbent upon them to do so than in ordinary cases; the pledge was not made in the ordinary course of business, but the pledgor was by the act of pledging withdrawing from the business a part of the property which he held for ordinary sale; how large a part does not appear, nor for how long it was expected to be withdrawn.

Such, surely, was not in accordance with the ordinary custom of merchants, and was in itself perhaps a fact that should have aroused inquiry as to the *status* of the property and the relation of the pledgor thereto.

It would seem that it was incumbent upon the appellants to have shown upon the trial how much money they loaned to Miller, and the value of the property which belonged to Miller, which they hold to secure the payment of the same; for if that property was of value sufficient to pay their debts, they could have had, under no state of facts, either a legal or equitable right to hold the property of the appellee to pay that debt. These facts were within their knowledge, and proof in regard thereto would be expected of them under the pleadings; but notwithstanding one of the appellants was a witness in the case, he was silent in regard to these matters when he ought to have spoken.

Under such facts the court may have concluded that they had no rights, even if Miller had the power to pledge, which a court was called upon to protect, and we are not prepared to say that such a finding would have been erroneous.

If, however, the finding of the court was based upon the want of power in Miller to make the pledge (and we cannot say that this was not the basis of the finding), then it is necessary to consider that question.

We have no statute upon the subject now to be considered, unless article 2368 of the Revised Statutes has a bearing upon the subject. It in substance provides that no factor shall directly or indirectly acquire or purchase any interest in property consigned to him, unless by *express license* from the owner.

This act was most probably intended to prevent simulated sales, by and through which a factor might seek to acquire an interest in the property confided to him for sale, and was not intended as a statutory declaration of

his want of power to pledge the property of his principal for the debts of himself. The spirit of the statute might, however, extend to a declaration of the want of power in a factor to dispose of the property of his principal by sale, mortgage or pledge, in any manner by which he might receive a benefit, other than that contemplated by his principal. Regarding the question as unaffected by any statute, the common law must furnish "the rule of decision" in this case. R. S., 3128.

It does not appear that any act was done by the appellee to mislead the appellants, and to cause them to believe that Miller was the owner of the property, unless the delivery of the possession thereof to him, and empowering him to sell the same, can be held in law to have had that effect.

The relation of principal and factor carries with it to the factor the possession of the property and the power to sell it; if either of these elements are wanting, the relation of principal and factor does not exist, and the possession must be referred to some other class of bailment, and the power to sell to some other class of agency.

It is not believed that at common law the simple facts of possession and power of sale have ever been held sufficient *indicia* of ownership in a factor to authorize a third person to take the property so held in pledge for the debt of the factor.

The law is thus stated by an elementary writer: "At common law it was held that an agent authorized to sell goods could not, although the apparent owner thereof, by permission of his principal, pledge the same by delivering to a person either the goods themselves or any document of title relating thereto." Chitty on Contracts, 204.

Another elementary writer says: "An authority to an agent to sell does not authorize him to exchange them in barter, or to pledge them; for there is no usage of trade to that extent;" and again, "The doctrine of the want

of authority of a factor to pledge the goods of his principal is now well settled, although it has been greatly doubted at different times." Story on Agency, 78.

This doctrine is well and firmly established in England. Patterson *v.* Tash, 3 Str., 1178; Daubigny *v.* Duval, 5 T. R., 604; Martini *v.* Cole, 1 M. & S., 140. In the case of Queeroz *v.* Trueman, 3 Barn. & Cress., 348, the doctrine was commended by all the judges sitting, and it was therein held that the fact that the principal had requested the factor to make remittances in anticipation of sales of the property consigned did not give the power to pledge.

In the case of Graham *v.* Dyster, 2 Stark., 21, it was held that sending goods to a factor for sale, and drawing upon him for the value of the property consigned, did not authorize him to pledge the goods even to raise funds to meet the bills.

In Bouchout *v.* Goldsmid, 5 Vesey, 210, Lord Chancellor Loughborough said: "It has been settled with regard to goods; and there is no doubt that if goods are consigned to a factor to sell, he cannot pledge them. It must be a *bona fide* sale for valuable consideration. I am not apprised of the late cases, but I had taken it to be a pretty clear principle. The defendants are certainly wrong in point of law; I take it not merely to be a principle of the law of England, but by the civil law, that if a person is acting *ex mandato*, those dealing with him must look to his mandate."

If further evidence of the establishment and existence of this rule of the common law in England was needed, it is to be found in the legislation of that country in what are known as the "Factors' Acts," beginning in the year 1823, and by several intervening acts, ultimating in the act passed in the year 1877, by which changes have been made from the common law rule to meet the various phases thereof which had been felt to operate harshly upon the commercial interests of that country and its

people.   The substance of these several acts, and the constructions placed upon them by the courts of that country, will be found in the recent work of Mr. Evans (Ewell's Evans on Agency, 542 *et seq.*), and by an examination of the same it will be seen that each of said acts has in some respect changed the common law rule.

In each of the states of the United States in which the common law has been adopted, the common law rule is in force, except in so far as the same has been changed by statute.   Story on Agency, 113.   An examination of the cases in the several states upon this subject would require more time and space than we can now give to that subject.

The general rule is thus stated by Chancellor Kent: " To pledge the goods of the principal is beyond the scope of the factor's power; and every attempt to do it under color of sale is tortious and void.   If the person will call for the letters of advice, or make due inquiry as to the source from which the goods came, he can discover (say the cases) that the possessor held the goods as factor and not as vendee; and he is bound to know, at his peril, the extent of the factor's power."   2 Kent's Comm., 625.

The case of Kinder *et al.* v. Shaw *et al.*, 2 Mass., 398, was in its facts very similar to the case now under consideration.   It was an action of *trover*, brought to recover goods placed by the plaintiff in the custody of Carter, who kept a retail shop, under an agreement between them that Carter should sell them and receive for his services a stipulated commission on sales.   After Carter received the goods, having need for a loan of money, he borrowed the same from the defendant, and to secure its payment pledged the goods of the plaintiff, together with goods of his own.   In that case, as in this, it was contended as Carter was not a known factor, and the goods of the

plaintiff were placed in the store of Carter among his own, and openly exposed for sale, that the apparent ownership thus given would make a pledge of the goods binding upon the plaintiff when made to a person who did not know for what purpose the factor held them.    Parsons, C. J., rendered the opinion in the case, and "observed that the court considering the question of importance to the mercantile part of the community, had looked into the case with attention, and were all of opinion that a factor has no authority to pawn goods which have been entrusted to him for sale.    The rights of the principal and factor depend on the law merchant, which has been adopted by the common law.    By this law a factor is but the attorney of his principal, and he is bound to pursue the powers delegated to him."

The same principles are announced in the case of Lanscott v. Lippincott, and another, by Tilghman, C. J., in 69 Sergeant & Rawles, 391, where the reasons of the rule are clearly set forth.

In the case of Hutchinson v. Bours, 6 Cal., 385, which was a case based upon facts very similar to those of the case now under consideration, a different conclusion was arrived at, but that decision seems to have been founded upon a statute in force in that state.

We conclude that, under the facts of this case, Miller had no power to pledge the goods of the appellee; that so the law is.    If it be true that the good of commerce, or the due protection of persons who deal with factors in good faith, requires a different rule, it rests with the legislature to afford it, as has been done in England and in most of the other states, and not with the courts.

The court did not err in refusing to grant a new trial, nor in rendering an alternative judgment for the aggregate value of the property.

Each of the instruments except one are valued in the

judgment; the aggregate value of all is therein given, from which the value of the one not separately valued can be arrived at as certainly as though valued in the judgment.

There being no error in the judgment, it is affirmed.

AFFIRMED.

[Opinion delivered December 16, 1881.]