THE STATE BANK OF NEBRASKA, PLAINTIFF IN ERROR, v. D. S. LOWE, DEFENDANT IN ERROR.

**Lien on Live Stock: STATUTORY CONSTRUCTION.** The act of the council and house of representatives of the late territory of Nebraska, entitled "An act to provide for liens upon live stock for their keeping," approved February 18, 1867, examined, and *Held*, Not to give a lien upon live stock for their keeping superior to the lien of a previously executed, delivered, and recorded mortgage thereon.

ERROR to the district court for Saline county. Tried below before MORRIS, J.

*Dawes, Foss & Stephens,* for plaintiff in error, cited: *Kingsbury v. Smith,* 13 New Hamp., 109. *Hyde v. Noble,* 13 Id., 494. *Farley v. Lincoln,* 51 Id., 580.

*Hastings & McGintie,* for defendant in error, cited: *Case v. Lane,* 21 Kan., 217.

COBB, J.

This cause comes up on error from the district court of Saline county. The cause was tried to the court without the intervention of a jury, upon a stipulation of facts which I here copy at length:

"It is hereby stipulated and agreed that the following are the facts in this case:

"1st. That the plaintiff is incorporated under the laws of Nebraska as the State Bank of Nebraska, at Crete, Neb.

"2d. That on the 23d day of May, 1883, one F. A. Griswold was the owner of the property in controversy in this case, viz.: One large red cow, seven yearling heifers of the value of $195, and that on said 23d day of May, 1883, among other things said F. A. Griswold gave to plaintiff a chattel mortgage on said animals to secure the sum of $700. A true copy of said mortgage is hereto attached, marked 'A.' That said sum has long been due and has not been paid.

"3d. That on the 4th day of December, 1883, without the knowledge of plaintiff, said Griswold placed the same identical property in controversy in this case, in the hands of defendant for care and keeping during the ensuing winter, and that said defendant took all of said animals on said 4th day of December, 1882, and kept, fed, watered, and cared for all of said animals from said 4th day of December, 1883, until the 15th day of April, 1884, at the stipulated and agreed price-of $40. That said sum has not been paid nor any part thereof, nor has the same nor any part thereof been tendered to this defendant.

"4th. That on the 5th day of April, A.D. 1884, and before this action was commenced, plaintiff demanded the possession of said animals in controversy herein, which defendant refused, and that said plaintiff under and by virtue of the said chattel mortgage heretofore mentioned, replevied the said animals, and that said defendant refused to

deliver up the possession of said animals for the reason that he claimed a lien upon said stock for his care and keeping, sheltering, feeding, and watering the same.

"5th. That there is due said defendant for the care and keeping of said animals the sum of $40 and interest thereon from April 15th, 1884.

"6th. That said defendant had no actual knowledge of the existence of said chattel mortgage until the 15th day of April, 1884, but said plaintiff filed said chattel mortgage in the office of the county clerk of Saline county, Nebraska, on the 23d day of May, 1883, and the same was duly filed and indexed by him in manner provided by law.

"None of said stock in controversy herein was out of the custody and possession of this defendant from the time they were so received by him for care and keeping on the 4th day of December, 1883, until they were taken from his possession by the officer under the writ of replevin which was issued in this case."

The finding and judgment of the district court were for the defendant. I adopt the language of counsel for defendant in error in saying that, "The question, and only question presented, is whether an agister's lien for feeding and wintering live stock is paramount to the lien of a prior chattel mortgage thereon." The answer to this question must depend upon the construction of the provisions of our statute applicable thereto.

The provision of our statute which it is claimed gives a lien to the agister of cattle is found on page 57, Comp. St. (Ch. 4, Sec. 28), and is in the following words:

"SECTION 28. When any person shall procure, contract with, or hire any person to feed and take care of any kind of live stock, it shall be unlawful for him to gain possession of the same by writ of replevin or other legal process until he has paid or tendered the contract price or a reasonable compensation for taking care of the same."

Although this statute has been in force since 1867, it

never has been construed by this court, and as I am unable to find that a similar one exists in any of the sister states, I conclude that its language has not been construed by the courts of any state. It cannot fail of observation that the word "lien" does not occur in the body of the act. I use the word act purposely, because while in the current compilation it constitutes section 28 of the chapter entitled "Animals," it was passed as an entire statute of one section. At the date of its passage, so far as I am able to ascertain, there was no provision of law in force in either of the states of Ohio, Illinois, Iowa, Missouri, Minnesota, Kansas, Texas, or California, giving the agister of cattle a lien on the animals agisted, nor was there any such statute in force in the state of Michigan, if we except an apparent recognition in the general lien law of 1846, of an agister's lien at common law. Ours was then probably the first western state or territory to recognize the necessity of providing some measure of protection to the herders and feeders of cattle against the reclamation of such stock by the owners without paying for their keeping. But our legislature seems to have proceeded with great caution; and instead of adopting the language of the statutes of New Hampshire and other eastern states, which gave a lien in express terms to the agisters of cattle, they only created an estoppel against the person contracting, hiring, or procuring the feeding and caring for of live stock to gain possession of such stock by replevin or other legal means, until he should make payments or tender the same therefor. They might have followed the language of any of the said statutes and thereby adopted the construction placed upon the same by the courts. As they did not do it, but used more limited terms, it is but fair to presume that they intended to avoid a repetition of the litigation which had originated under them.

In the case at bar, Griswold, the mortgagor, having contracted with the defendant in error to feed and care for the

cattle in question, was estopped to reclaim them until he had paid or tendered the pay therefor. Such estoppel will include the plaintiff in error if it was in privity with him in such contract. Had the mortgage been executed after the contract for the agisting of the cattle, and while they were in the possession of the agister, then doubtless the mortgagee's rights would have been subject to those of the agister, and such would probably be the case had the mortgage, although executed and delivered, remained unfiled and unrecorded at the date of the agisting contract. But clearly the relation of mortgagor and mortgagee confers no power upon the former to bind or estop the latter as privy, by a subsequent contract made without his consent or knowledge.

But to consider the case in a more practical point of view; let us suppose that the plaintiff in error had yielded to the claim of the defendant in error and paid him the sum demanded for the agisting of the cattle, how could it have reimbursed itself of the money so paid, even had there been a surplus of the proceeds of the sale of the cattle upon foreclosure of the mortgage? The terms of the mortgage, as set out in the records, authorized the mortgagee, in case of default in the payment of the debt secured by the mortgage, to take possession of the mortgaged property "to sell the same at public auction, or so much thereof as shall be sufficient to pay the amount due, or to become due, as the case may be, with all reasonable costs pertaining to the taking, keeping, advertising and selling of said property. The money remaining after paying said sums, if any, to be paid on demand to the said party of the first part." The word "keeping" as used in the above quoted clause of the mortgage, evidently means the keeping of the property after the taking and pending the advertising before sale. When the subject of the mortgage consists of inanimate chattels it includes storage, and, in many cases, insurance; but I never knew of a case where it was held

to include the expense of keeping while the mortgaged property remained in the possession, real or constructive, of the mortgagor. I accordingly come to the conclusion that had the plaintiff in error paid the demand of the defendant, it would have been a voluntary payment which could not have been allowed to him, as "costs pertaining to the taking, keeping, advertising, and selling of said property," and for which it would probably have had no legal cause of action against the mortgagor.

The provisions of our statute differ so widely from those of the statute of New Hampshire under which the cases cited from the reports of that state by counsel for plaintiff in error were decided, and from those of the subsequently enacted statute of Kansas, under which the able opinion by Judge Brewer, cited by counsel for defendant, was written, that I deem it impossible to follow the argument of either of those cases in the disposition of this. They will, therefore, not be commented upon.

The judgment of the district court is reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.