# Chapman *v.* First Nat. Bank of Montgomery.

*Action for Money had and Received.*

1. *Statutory lien of livery-stablemen; priority of former recorded mortgage.*—The lien given by statute to a livery-stable keeper, upon stock, for their keep and feed, is subordinate to the lien of a prior recorded mortgage thereon, even though the law-day of the mortgage is past and the stock remain in possession of the mortgagor, when such livery-stable charge is incurred without the consent of the mortgagee.

APPEAL from the Circuit Court of Montgomery.
Tried before the Hon. JOHN R. TYSON.

This was an action for money had and received, and was brought by the First National Bank of Montgomery against B. F. Chapman at the January Term, 1893; and was tried upon the following agreed statement of facts : " That on the 31st of August, 1888, R. J. Chambers was indebted to said plaintiff (First Nat. Bk.) in a large sum of money, to-wit, fifteen hundred dollars ($1,500.00), and to secure the same, executed to the plaintiff a mortgage on certain personal property, including the two mules (the proceeds of the sale of which are involved in this cause), which mortgage was duly recorded in the office of the probate judge

of Montgomery county, on the 6th of September, 1888, and a copy thereof (setting out the mortgage) is hereto attached as a part hereof. That said Chambers was at that time, and has ever since been, a resident of said county of Montgomery, and said property was owned by him, and was kept in said county of Montgomery; that afterwards, in the year 1890, said Chambers, while in possession of said mules, put the said stock in the livery stable of John H. Clisby, located at Montgomery, Alabama, where the same were kept and fed by the said Clisby as a livery proprietor, and the said Chambers became justly indebted to the said Clisby for the reasonable feed and keeping of said mules at said livery stable, in the sum of two hundred dollars; that, afterwards, on the 13th of March, 1891, the plaintiff and John H. Clisby each claiming to have the prior lien upon said mules, with the consent of R. J. Chambers, the mortgagor, entered into an agreement in writing, by which it was agreed that the mules were to be sold by the defendant, Chapman, and the proceeds held by him for the benefit of whichsoever party should be held to be entitled to the same; that on the 18th day of March, 1891, the said Chapman sold the said two mules and received therefor the sum of two hundred dollars, which he now holds in his possession, to be paid the plaintiff, or to John H. Clisby according as it may be determined which of said parties had the superior lien on said property at the time of the sale of said mules, under said agreement."

This being all the evidence, the plaintiff asked the court to give to the jury the following written charge, viz: "If the jury believe all the evidence in this case, they must find for the plaintiff;" which was given. To the giving of said charge the defendant duly excepted, and asked the court to give to the jury the following written charge: "If the jury believe all the evidence in this case, they must find for the defendant." The court refused to give this charge, and the defendant excepted.

Judgment was for the plaintiff. Defendant appeals and assigns as error the ruling of the court on said charges.

A. A. WILEY, for appellant, cited *Hammond v. Danielson,* 126 Mass. 294; *Colquitt v. Kirkman,* 47 Ga. 555; *Smith v. Stevens,* 36 Minn. 303; *Case v. Allen,* 21 Kansas, 217–20; Code of Ala. § 3089; *Johnson v. Hill,* 3 Starkie, 172; *Williams v. Allsup,* 100 Eng. C. L., 416; Hermon on Chattel Mortgages, 308; *Brown v. Holmes,* 13 Kansas, 492; *The St. Joseph,* 1 Brown Adm'r, 202; *The Granite State,* 1 Sprague, 277; *Don-*

34–98.

*nell v. The Starlight,* 103 Mass., 227–33; *Jones' Chattel Mort-gages,* §§ 473–5; *Laird v. Moonan,* 32 Minn., 358; *Scaife v. Stoval,* 67 Ala. 237; *Townsend v. Brooks,* 76 Ala. 311.

TOMPKINS & TROY, for appellee, cited Code of 1886, §§ 389, 390; *Bissell v. Pearce,* 28 N. Y., 252; Jones on Liens, § 691,

HARALSON, J.—The only question presented by this record is, has the statutory lien of a livery-stable keeper, given by § 3089 of the Code, for the keeping and feeding of stock, precedence over a mortgage on the animals previously given by their owner,—the law-day of the mortgage having past and the animals remaining in the possession of the mort-gagor. That section reads, "Any keeper, owner or proprie-tor of a livery stable, shall have a lien on all stock kept and fed by him, for the payment for his charges for keeping and feeding such stock, and he shall have the right to retain the stock, or so much thereof as may be necessary, for the pay-ment of such charges."

This question is an undecided one in this State, and there is a conflict in the authorities on it.

Mr. Jones, in his work on liens, with these conflicting au-thorities before him, says, "A chattel mortgage upon a horse is superior to a subsequent lien of a livery stable keeper, where the horse is placed in the stable by the mortgagor after the making of the mortgage, without the knowledge of the mortgagee," and as reasons leading to this conclusion, he adds, "It is not to be supposed, that a statute giving a lien for the keeping of animals was intended to violate fundamental rights of property, by enabling the possessor to create a lien without the consent of the mortgagee, when the person in possession could confer no rights as against the mortgagee by a sale of the animals. The keeper of animals entrusted to him by the mortgagor, undoubtedly acquires a lien as against the mortgagor, but it is a lien only upon such interest in them as the mortgagor had, at the time, and not a lien as against the mortgagee, between whom and the keeper of the animals, there is no privity of con-tract. The mortgagor, though in possession, is in no sense the mortagee's agent, nor does he sustain to the mortgagee any relations, which authorize him to contract any liability on his behalf. The statute can not be construed to author-ize the mortgagor to subject the mortgagee's interest to a lien, without his knowledge or consent, as security for a liability of the mortgagor, unless such a construction clearly

appears from the language of the statute to be unavoidable."

In support of these views, he cites *Jackson v. Kasseall*, 30 Hun. N. Y., 231; *Bissell v. Pearce*, 28 N. Y., 252; *Charles v. Neigelson*, 15 Ill., App. 17; *Sargent v. Usher*, 55 N. H., 287; *State Bank v. Lowe*, 22 Neb. 68; *Easter v. Goyne*, 51 Ark. 222; *McCreary v. Gaines*, 55 Tex. 485; *Small v. Robinson*, 69 Me. 425; Jones on C. Mortgages, § 474.

The contrary construction, sustained by respectable authority, proceeds upon the idea, that the animals must be preserved, and that their preservation enures to the benefit of the mortgagee; that the lien is of statutory creation, purely, and a mortgage executed while the statute is of force, is taken in subordination thereof, and is subject to such statute, as a general rule of law that a mortgagee, when he takes a mortgage, takes it, in legal contemplation, with full knowledge of and subject to the rights of a person who may keep the property at the request of the mortgagor or other lawful possessor, under the statutory lien, as he would do, to a common law lien.—*Hammond v. Danielson*, 126 Mass., 294; *Colquitt v. Kirkman*, 47 Ga. 555; *Smith v. Stephens*, 36 Minn. 303; *Case v. Allen*, 21 Kansas, 217–20; *Williams v. Allsup*, 10 C. B. N. S., 417; *The Granite State*, 1 Sprague 277.

It is for us to determine, which of these conflicting views is more consonant with reason and the policy of our own statutes. Thus aided, we may the more readily arrive at the intention of the legislature, in the creation of this statutory lien. Our registration laws proceed upon the idea, that no one with notice of a mortgage on personal property, had the right to deal with it, in any wise, to the prejudice of the mortgagee; and that, with knowledge or notice of the existence of the mortgage, he can acquire no rights in or title to the property mortgaged, which are not in subordination to those of the mortgagor; and we can perceive no reason, in the absence of a provision of the statute to that effect, to exempt a livery stable keeper, more than any other person, from the force and effect of our registration laws. It is not for us to give these statutes any such construction, unless we are constrained to do so, by the manifest intention of the legislature. These laws are of universal and unvarying application to all persons and classes, not specially exempted by statute.—Code, § 1814. Accordingly, we have held, that the due registration of a mortgage on personal property, is constructive notice to those who deal with the property, as binding on them as actual notice would be;

[Tatnall, et al. v. Rome F. & M. Works.]

(*Hudmon v. DuBose*, 85 Ala. 446; *Heflin v. Slay*, 78 Ala. 180; *Mayer v. Taylor*, 69 Ala. 403.) And that a factor or commission merchant,—for instance,—receiving and selling cotton for a mortgagor, without actual notice of the mortgage, is liable in trover to the mortgagee, if the mortgage has been properly recorded in the county in which the cotton was raised.—*Marks v. Robinson*, 82 Ala. 70; *Hudmon v. DuBose*, *supra*.

It will hardly be contended, that if the mortgagor, when he took the animals mortgaged, to the livery stable keeper, had notified him that the plaintiff held a mortgage on them, to secure a debt which he owed, the stable keeper would have been justified and protected, under our statute and decisions, in taking them into his charge and keeping, to the prejudice of the plaintiff; and yet, the registration of plaintiff's mortgage was as effective as actual knowledge of plaintiff's rights and interests in the premises.

The legislature, in the creation of this lien, did it, we must presume, with reference to our registration statutes, and the general policy of our law for the protection of mortgagees of personal property. In the adoption of the statute, it gave no preference or priority of lien over mortgages or incumbrances.

The court below did not err in giving the general charge for the plaintiff, and in refusing a like charge for the defendant.

Affirmed.