ROBERTS, Respondent, vs. FRANCIS, Appellant.

*September 29—October 18, 1904.*

*Production of papers: Order: Enforcement: Abuse of discretion: Evidence: Witnesses: Appeal and error: Principal and agent: Exchange of property: Authority: Presumptions: Ratification: Replevin: Tender.*

1. In an action of replevin defendant procured an order under sec. 4183, Stats. 1898, requiring plaintiff to deposit certain documents with the clerk of the court between the hours of nine and four of the following day. This order was served on plaintiff's attorney the day of its date, who forthwith filed an affidavit that he had no such documents in his possession, nor any knowledge concerning them, that plaintiff was not within Wisconsin, but was in the state of Minnesota, and for these reasons he could not comply with the order. The order was never served on plaintiff. He was first informed of its existence while testifying upon the trial, and defendant examined plaintiff fully as to the contents of the documents. *Held,* that the defendant was not in a position to insist upon the produc-

tion of the documents, and in default thereof that plaintiff be punished.

2. In such case, under the facts stated in the opinion, there was no abuse of discretion in the refusal of the court to enforce such order.

3. When an examination of the evidence discloses no direct or circumstantial proof conflicting with plaintiff's claim of ownership of property in question, nor that his testimony is the only proof on that subject, it is not error to refuse to submit the question of ownership to the jury.

4. The failure of the plaintiff to produce certain documents, is *held*, under the circumstances stated in the opinion, not to raise a presumption that the documents would furnish proof against the claims of plaintiff.

5. While the facts of possession and control of a principal's property by an agent may be evidence to show authority to sell, such evidence cannot be made the basis of a presumption that the agent might exchange the property of his principal, whereby the transferee, claiming through the transaction, can resist recovery of it by the true owner.

6. Ratification of a transfer of property by an agent cannot arise while the principal is in' ignorance of the transaction, and when, after knowledge of the transfer, it is persistently repudiated.

7. Where an agent has made a transfer of his principal's property in exchange for other property, and the transferee refuses its surrender, but claims to hold and retain it as owner under the transfer, it is not necessary for the principal to tender return of the property received by his agent before commencing an action of replevin.

Appeal from a judgment of the circuit court for Jackson county: James O'Neill, Circuit Judge. *Affirmed.*

Plaintiff commenced an action of replevin April 28, 1903, to recover possession of a French coach stallion, alleged to be worth $2,500. The sheriff took the horse from defendant's possession and delivered it to the plaintiff, and he retained it up to the time of the trial. The plaintiff alleges that he is the owner of the horse, and had owned it for many years prior to the commencement of the action; that it and other horses owned by him had been kept on a farm in Minnesota in the possession of his brother, Nathan Roberts, for several years

past; that on or about March 9, 1903, one James G. Hanan unlawfully took possession of the horse for the Westfield Importing Company, and turned it over to defendant, by whom it was unlawfully detained from plaintiff's possession, to his damage.   The defendant denied plaintiff's claims, and asserted that he was lawfully in possession of the horse.   Upon the trial it appeared that the horse is one which the plaintiff had shipped with other horses in the spring of 1901 from his ranch in Texas to the Roberts farm in Goodhue county, Minnesota.   Nathan Roberts, plaintiff's brother, kept this horse on this farm, with the privilege of using him for breeding purposes, and he was authorized to sell the stock so shipped to the farm, except this and another French coach stallion, which he was informed plaintiff wished to keep and retain. On March 9, 1903, Nathan traded the horse in question, with another French coach stallion, to the Westfield Importing Company, as his own property, receiving therefor a stallion named Myron, and other consideration.   This trade was negotiated for the Westfield Importing Company by N. W. Green and James G. Hanan, representing the company.   The horses were exchanged under this trading contract on March 9, 1903, and possession delivered of the respective horses to the parties to the trade.   Plaintiff testified that he received a letter from his brother, Nathan, about the 10th of March, 1903, which informed him that Nathan had a chance to trade the two French coach stallions for a Percheron stallion, and that a stock company was being organized among the farmers of Nathan's community for the purchase of this horse at the price, as he recollected, of from $2,000 to $2,500.   He received two telegrams some time thereafter informing him of some difficulty about these French coach stallions, and advising him in the last one to come and replevy them.   The last message reached him on the day before he left Texas for Minnesota and Wisconsin, where he arrived about the 19th of April.   He testified further that he received this message be-

fore receiving a second letter from Nathan on the same day;
that he did not reply to either of these messages or the last
letter; that upon arrival at Nathan's place he learned for the
first time that Nathan had traded these two stallions to the
importing company; that he immediately made search for his
horses, and, upon discovering that this one was in the posses-
sion of defendant, demanded its return; and that Mr. Hanan,
the representative of the importing company and the defend-
ant, refused to comply with the demand.   Mr. Hanan testified
that he dealt with Nathan Roberts in the understanding and
belief that Nathan was the owner of these French coach stal-
lions, and he informed plaintiff that he had nothing to do
with him and that he would not recognize him in the trans-
action.   Hanan insisted that the bill of sale signed by Nathan,
conveying these horses, transferred title to the importing com-
pany, for which he acted, and that the sale of the horses'to the
company by Nathan Roberts would be relied upon as estab-
lishing the ownership of the horses in the importing company.
On October 8, 1903, defendant petitioned the court for an
order directing plaintiff to deposit the correspondence be-
tween himself and Nathan for the months of March and
April, 1903, with the clerk of the circuit court for Eau Claire
county on the following day, and that he produce the corre-
spondence upon the trial of the case.   This order was made
and served on plaintiff's attorney at the city of Eau Claire,
October 8th, and he immediately filed an affidavit stating that
he had no such correspondence in his possession, and that
plaintiff was not then in the state of Wisconsin, but in the
state of Minnesota.   Plaintiff and his attorney attended the
taking of Nathan Roberts' deposition in Minnesota on Octo-
ber 10, 1903.   The case was taken up for trial on the 16th of
October following.   The correspondence referred to in the
order was not produced at the trial.   Plaintiff testified that he
had never been informed of the court's order to produce the
correspondence; that if the correspondence was in existence

it was in the state of Texas, and that he did not understand
that it was material in the case; and that he was not advised,
and did not understand, that it was necessary to produce
it. It is without dispute that whatever horses plaintiff had in
the state of Minnesota were in the charge and the possession
of his brother, Nathan Roberts, and under his management
and control. At the conclusion of the taking of the testimony
the court directed the jury to return a verdict for the plaint-
iff, finding that plaintiff is the owner of the horse, that de-
fendant unlawfully detained the same, and that plaintiff re-
cover nominal damages. It was not disputed but that the
horse was worth $2,500. Judgment was awarded on this ver-
dict for the recovery of the horse, for damages, and costs, and
from such judgment this appeal is taken.

For the appellant there was a brief by *Wickham & Farr,*
and oral argument by *James Wickham.*

*W. H. Frawley,* attorney, and *Carl C. Pope,* of counsel,
for the respondent.

SIEBECKER, J.   Error is assigned upon the action of the
court in refusing to enforce its order requiring the produc-
tion of the correspondence between plaintiff and his brother,
Nathan Roberts, from March 9, 1903, to the commencement
of the action. As shown in the statement of facts, this order
was obtained by defendant on October 8, 1903, and was served
on plaintiff's counsel the same day. It required the produc-
tion of the correspondence at the trial, and that it be filed
with the clerk of the court between the hours of nine o'clock
and four o'clock of the following day. Plaintiff's counsel filed
his affidavit with the court on October 9th, admitting service
of the order, and stating that he had no such correspondence
in his possession, nor any knowledge concerning it, and that
plaintiff was not then within the state of Wisconsin, but was
in the state of Minnesota, and for these reasons he could not
comply with the order. The order was not served on plaint-

iff; he was first informed of its existence while testifying upon the trial. Defendant examined plaintiff fully as to the contents of this correspondence. Under these circumstances defendant was not in a position to insist upon the production of the correspondence, and in default thereof that plaintiff be punished. It rested in the sound discretion of the trial court to determine whether plaintiff's conduct merited the imposition of any penalty. The court held that the order ought not to be enforced, as requested. We cannot say that such action was an abuse of its discretion under sec. 4183, Stats. 1898. *Treleven v. N. P. R. Co.* 89 Wis. 598, 62 N. W. 536.

Appellant insists that the question of the title and ownership of the horse should have been submitted to the jury, for the reason that the proof of title rested solely on plaintiff's testimony. It is argued that this question should have been submitted to the jury under the evidence, for the reasons that he is an interested party, and that his testimony had been shown to be false in material respects and impeached by material facts and circumstances. An examination of the evidence discloses no direct or circumstantial proof conflicting with plaintiff's claim that he is the owner of the horse in question, nor is his evidence the only proof on the subject. Nathan Roberts, who testified in behalf of the defendant, made no claim or assertion to ownership of the horse. His testimony pertaining to the transactions between himself and plaintiff concerning this horse tends to corroborate plaintiff's claim of title. It is true, plaintiff's evidence is that of an interested party, but it appears to give a detailed and consistent narrative of all the material facts, without evasion, and it does not furnish indications of improbability or unreliability. The fact that Nathan Roberts had possession of this and other horses is, under the circumstances shown, in no way inconsistent with plaintiff's ownership and Nathan's possession for the purposes claimed.

It is asserted that it clearly appeared that he testified

falsely concerning the contents of the correspondence, but we find no reliable ground for this claim. The fact that the witness Green testified that he told Nathan Roberts what to write to plaintiff in the letter of March 10, 1903, is not of such probative force as to warrant the conclusion that plaintiff's testimony of the contents is false, in view of the fact that it appears that Mr. Green does not know of his own knowledge what were the contents of this letter. Other instances cited to our attention as impeaching plaintiff have been examined, and we find nothing which would justify the trial court and the jury in disregarding the testimony of plaintiff, in passing upon these issues, nor was there such conflict in the proof of title as to present any other reasonable inference than that plaintiff is the true owner of the horse.

There is no evidence that the sale by Nathan Roberts to the Westfield Importing Company was within his actual authority, but it is contended that it was within his authority, as plaintiff's agent, under the facts and circumstances of the case. It is argued that plaintiff's failure to produce the correspondence amounts to a wilful suppression of documentary evidence, and tends to show such authority. As we have stated, the record is bare of anything showing that plaintiff suppressed this evidence. His explanation as to why he did not produce it is reasonable and entitled to credence. Nor does it lie with defendant to assert this claim, in view of the procedure taken by him under the statute, as above indicated, and the course adopted by him upon the trial in seeking to show the contents of these documents by plaintiff's evidence, which he apparently gave with the utmost freedom and to the best of his recollection. Under these circumstances, no presumption will be indulged that the contents of the letters would furnish proof against the claims of plaintiff.

It is insisted, if plaintiff gave no actual authority to sell these horses, that Nathan had an implied authority to dispose of them as he did. This is predicated upon the facts

showing that the horses were in the possession of Nathan for a number of years; that he handled and treated them and appeared to exercise control over them as owner. While the facts of possession and control of a principal's property by the agent may be evidence tending to show authority to sell, there is no implication that he is authorized to deal with it in any other way. Such proof is never made the basis of a presumption that the agent might exchange the property of his principal, and a transferee claiming through such a transaction cannot resist recovery of it by the true owner. *Mechanics' Bank v. N. Y. & N. H. R. Co.* 13 N. Y. 599, 633; *Wheeler & W. Mfg. Co. v. Givan,* 65 Mo. 89; *Trudo v. Anderson,* 10 Mich. 357; *McCreary v. Gaines,* 55 Tex. 485.

The claim of ratification cannot arise, for the reason, as heretofore indicated, that plaintiff had no knowledge of this transfer until after he arrived in this state on April 20, 1903, and thereafter he persistently repudiated the trade made by his brother.

It remains to ascertain whether plaintiff could maintain this action without an actual return of the horse received by his brother from the Westfield Importing Company. When he notified Mr. Hanan, the representative of the company, that he was the owner of this horse, and demanded its return, he was informed by the company's representative that it refused to surrender the property, and would hold and retain it as owner under the trade with Nathan Roberts, notwithstanding the claim he made as to the true owner. This claim of the company has been consistently maintained to the present. The defendant simply acted for the company. This attitude of the defense clearly shows that the company, through its representative, refused to receive back the horses they had parted with upon any condition, and an attempt to make actual return of the horse delivered to Nathan Roberts by the company would have been an idle and useless ceremony. Under these circumstances the plaintiff is relieved

from the necessity of actually tendering the return of such horse before commencing this action. We find no grounds which preclude plaintiff from prosecuting his suit to judgment.

*By the Court.*—Judgment affirmed.