# Carrol Mercantile Co. *v.* Folmar.

### Trover.

(Decided December 16, 19915.   7 0South. 985.)

1. **Trover; Action by Mortgagee; Estoppel.**—Where a mortgagee had held mortgages upon the crops of the same mortgagor for about eight years, and during that time the mortgagor had sold the cotton when and to whom he saw fit without consulting the mortgagee, and had paid the proceeds to the mortgagee, but the mortgagee had never authorized the sale of the bale of cotton in suit, nor received its proceeds, and there was a balance due on the mortgage from the mortgagee to him, he was not estopped from suing the purchaser for a conversion.

2. **Sale; Bona Fide Purchaser; Notice.**—The registration of a chattel mortgage in the probate office of the county in which the property mortgaged is situated was notice to all the world, including subpurchasers, under §§ 3373, 3386, Code 1907.

APPEAL from Pike Law Court.

Heard before Hon. T. L. BORUM.

Trover by W. B. Folmar against the J. S. Carroll Mercantile Company for a bale of cotton.   Judgment for plaintiff and defendant appeals.   Affirmed.

A. B. FOSTER, for appellant.   C. C. BRANNEN, for appellee.

PELHAM, P. J.—This suit was for the conversion of a bale of cotton, and was tried on the issues made under a plea of the general issue.

(1) The evidence showed that during the year 1913 one Miller raised the bale of cotton in controversy in the course of his farming operations; that in January, 1913, Miller executed a mortgage to W. B. Folmar, the appellee (plaintiff below), covering his crop for that year, including the bale in suit, which was designated by the marks "J-94."   This mortgage was duly recorded in the probate office of the county during the same month, on, to-wit, January 16, 1914.   Subsequently, in October, 1913, Miller, the mortgagor, who raised the cotton, sold, without the authority of Folmar, the mortgagee, this bale of cotton to the Matthews & Mott Company, who in turn, shortly thereafter, sold it to the J. S. Carroll Mercantile Company, the appellant here and the defendant in the trial court.   The only other evidence

[Carrol Mercantile Co. v. Folmar.]

necessary to refer to in passing upon the questions presented here is that Miller testified that he had been having dealings with Folmar for about eight years, during which time Folmar had had mortgages on the crops raised by him each year, and that he (Miller) "had habitually sold his cotton to whom, as, and when he saw .fit, without consulting the plaintiff [Folmar]," and would pay the proceeds of the cotton sold by him to Folmar. It was without dispute in the evidence that Miller did not pay the proceeds of the bale involved in this suit to Folmar, and Folmar testified, and it is not disputed, that Miller owed him a large balance on the mortgage (several hundred dollars), and that he had never authorized Miller to sell the cotton crop on which he held a mortgage for the year 1913, or any part of it, which included the bale in controversy marked "J-94," that the defendant had purchased from the Matthews & Mott Company and disposed of before suit brought.

The facts in this case are not like those in the case of *Brooks v. Greil Bros. Co.*, 179 Ala. 459, 60 South. 387, where the fiduciary relation of husband and wife entered into consideration, and the plaintiff in that case had armed her husband as her general agent "with full authority to rent the place and collect the rents, and to dispose of said rents for a limited or specific purpose"—it being held in that case (which was a suit by the wife as plaintiff for money had and received to recover of an innocent third party purchaser the price of cotton received through the agent from a tenant) that if the agent had misappropriated the rent he had been given authority to collect, he merely exceeded his authority as agent, and that the wife, who armed him with the authority, should suffer.—*Brooks v. Greil Bros., supra.* The facts in this case without dispute show that the plaintiff, Folmar, who held ·a mortgage on Miller's crop for the year 1913, had never authorized Miller as his agent, or otherwise, to sell the crop of that year, or any part of it. We find nothing in the additional facts testified to by Miller that in previous years he had sold the cotton raised by him in those years when the plaintiff held other mortgages against him that would estop the plaintiff from asserting his rights under the mortgage held by him to the 1913 crop as against the defendant, who it does not appear was even apprised of the facts as to the sales by Miller on previous years, or that he had constituted the mortgagor his agent to sell the mortgaged property and account to him for the proceeds.

(2) The mortgage of the plaintiff was duly registered in the proper office, and was constructive notice to those who dealt with the property, as binding on them as actual notice would have been.—*Chapman v. Bank,* 98 Ala. 528, 13 Sôuth. 764, 22 L. R. A. 78. The registration under sections 3373 and 3386 of the Code was notice to all the world, including subpurchasers.—*Chadwick v. Russell,* 117 Ala. 290, 23 South. 524; *Stickney v. Dunaway & Lambert,* 169 Ala. 464, 53 South. 770; *Williams v. Vining,* 150 Ala. 482, 484, 43 South. 744.

The cases cited by appellant, with reference to the rule as to the registration of deeds to realty from any other person than the grantor, from whom title is claimed, not being operative to give constructive notice to a subsequent purchaser, are not applicable to the case in hand.

The only assignments of error are that the court erred in giving the general charge for the plaintiff, and in refusing a similar charge for the defendant. In this we think the trial court committed no error.

Affirmed.

THOMAS, J., not sitting.