(131 So. 567)

### DUTTON v. GIBSON.
#### 8 Div. 221.

Supreme Court of Alabama.

Dec. 18, 1930.

S. A. Lynne, of Decatur, for appellant.

BOULDIN, J.

The plaintiff, R. L. Gibson, sued defendant, J. E. Dutton, in trover for the conversion of "two black horse mules about ten years old and weighing about 1,050 each."

Both parties claim under mortgagee from one Wallace Harroway, now deceased.

Plaintiff's evidence goes to show that during the fall of 1924 he let Harroway take the mules for their keep, looking to a future purchase of them; that on January 7, 1925, a sale was made to Harroway and mortgage to plaintiff executed contemporaneous therewith. Meantime, however, on January 1, 1925, defendant took a mortgage from Harroway, and it was duly recorded prior to the giving of the mortgage to plaintiff.

There was some evidence tending to show the mules were sold to Harroway when he took possession in the fall of 1924. A jury question was thus presented as to which mortgage, if valid, should have priority.

The trial court gave the affirmative charge for plaintiff. This ruling can be justified only upon the theory that defendant's mortgage, as to these mules, is void for uncertainty of description.

The general or blanket description in defendant's mortgage, so far as pertinent, reads: "All my, or our live stock and personal property of every kind now in my or our possession and owned by me or us * * * including * * * mules," etc.

Obviously "my or our," "me or us," refer to the maker or makers of the mortgage, the same as "I or we" appearing in the granting clause, a form for use by one or more, as shall appear from the signature or signatures to the mortgage.

So the question is: Does a mortgage covering all the live stock in possession of and owned by the mortgagor, when duly recorded, carry constructive notice to one dealing with the mortgagor as to live stock in his possession?

The question is of such everyday concern as to call for definite decision and clear statement of the law.

In Ellis v. Martin, 60 Ala. 394, dealing with a mortgage of "my entire crop of cotton and corn of the present year," it was said: "Generality and indefiniteness of description will not avoid a conveyance. It is uncertainty that will not be removed when the conveyance is read in the light of the circumstances surrounding the parties at the time it was entered into, and their manifest design is considered. Nor can it be admitted that the necessary effect of the generality of the description is to mislead and deceive strangers dealing with the mortgagor. If purchasing from him corn or cotton, inquiry is excited and they are bound to ascertain, and must at their peril ascertain, whether it was raised by the mortgagor in 1875."

In Smith v. Fields, 79 Ala. 335, it was said· "It must be conceded that the description—'my entire crop of cotton and corn'—is very general and indefinite; but it is capable of being made reasonably certain, without violating any rule of evidence."

Evidence that the mortgagor owned a farm and made a crop thereon that year was held admissible. The opinion proceeds: "The description of the property in the mortgage. though general, is sufficient to put on inquiry; and the defendant, purchasing from the mortgagor, was bound to ascertain whether the cotton he purchased was the same conveyed by the mortgage."

Other instances of crop mortgages are found in Hamilton v. Maas & Bro., 77 Ala. 283, Truss v. Harvey, 120 Ala. 636, 24 So. 927, Woods v. Rose & Co., 135 Ala. 297, 33 So. 41, Mitchell v. Abernathy, 194 Ala. 608, 69 So 824, L. R. A. 1917C, 6; Avondale Mills v Abbott Bros., 214 Ala. 368, 108 So. 31.

Turning to live stock mortgages, our cases declare the same general rules.

In Connally v. Spragins, 66 Ala. 258, it is said: "The description of the animal sued for, as 'one black mule about eight years old,' is not so general or indefinite as to avoid the mortgage, or authorize its exclusion from evidence. Such a general description may be rendered more certain when 'read in the light of circumstances surrounding the parties,' at the time the instrument was executed. And it was sufficient, when recorded, to excite the inquiry of strangers dealing with the mortgagor, and thus charge them with notice. Ellis v. Martin, 60 Ala. 394."

In Tompkins v. Henderson & Co., 83 Ala. 391, 3 So. 774 (an action of detinue by mortgagee against purchaser under execution sale as the property of the mortgagor), the mortgage described the property as a "black mare mule." The case was complicated by evidence that the mule sued for was a "dark mouse-colored mare mule." Evidence was admitted to show the mortgagor (defendant in execution) had no other mules than the two described in the mortgage as "black mare mules."

The mortgage was held admissible, and the rule declared that, if the description of the property was sufficient to put the parties on inquiry, which, if followed up, would have led to knowledge of the identity of the mule, it was sufficient.

In Stickney v. Dunaway & Lambert, 169 Ala. 464, 53 So. 770 (action of detinue between mortgagee and purchaser from mortgagor). the description was "one sorrel mule colt Traveller." One issue was whether the mule could be called a sorrel. That case, defining the legal test of the sufficiency of description in a chattel mortgage as against third persons, adopts as in accord with our former decisions, the rule stated by Judge Freeman (169 Ala. 468, 53 So. 770, 771): "The mortgage * * * must point out the subject-matter of it, so that such persons (purchasers) by it, together with such inquiries as the instrument suggests, may be able to identify the property intended to be covered."

This rule has been repeatedly followed by this court as applicable to both crop mortgages and live stock mortgages. Avondale Mills v. Abbott Bros., 214 Ala. 368, 108 So. 31; Mitchell v. Abernathy, 194 Ala. 608, 69 So. 824, L. R. A. 1917C, 6; Hammond v. Cabaniss, 213 Ala. 221, 104 So. 320.

With singular unanimity this is the standard test adopted by courts and text-writers throughout the country.

Thus writes Mr. Jones: "A description which will enable third persons, aided by inquiries which the instrument itself suggests to identify the property, is sufficient." Jones on Chattel Mortgages (5th Ed.) § 55. To like effect, see Pingrey, Chattel Mortgages, § 143; 11 C. J. 458, and long line of cases, note 36; 5 R. C. L. p. 424, § 55.

In applying this rule, the inquiries suggested by the instrument vary with the subject-matter. Dealing with certain classes of chattels, the location of same is often stressed as an important element of description. Location is not an exclusive or essential element of description.

As regards live stock and the like, possession and ownership are frequent means of identification. Possession is a fact provable as other facts. It is one means of locating and identifying chattels.

There are cases where a number of live stock or other chattels are called for, and on inquiry it appears they are only a part of a collection, group, or herd, with no descriptive data whatever to distinguish one from

the other. This was an element in the case of Wood v. West Pratt Coal Co., 146 Ala. 479, 40 So. 959.

But a description calling for all the live stock in possession of and owned by the mortgagor sufficiently informs every one about to acquire same from the mortgagor; the purchaser or second mortgagee must ascertain at his peril whether such property is covered by the recorded mortgage as it purports to be. One about to deal with a mortgagor has knowledge of his whereabouts and of the location of the chattel he is acquiring or has the means at hand to ascertain these facts. This is the logical result of our decisions, the legal test we have adopted, and of the authorities we have approved. Jones on Chattel Mortgages, § 54-b; 11 C. J. pp. 457, 458, and page 465.

The case of Stewart v. Clemens, 220 Ala. 224, 124 So. 863, 66 A. L. R. 1454, dealing with a description of live stock like that here involved, is not in harmony with our former decisions, and, in so far as opposed to this decision, is hereby overruled.

Reversed and remanded.

ANDERSON, C. J., and SAYRE, GARDNER, and FOSTER, JJ., concur.

THOMAS and BROWN, JJ., dissent.

BROWN, J. (dissenting).

The litigation in Stewart v. Clemens, 220 Ala. 224, 124 So. 863, 66 A. L. R. 1454, as here, was not between the parties to the mortgage, and here the litigation is between two alleged mortgagees, the plaintiff claiming under two mortgages executed by Wallace Harroway to plaintiff to secure the payment of the purchase money for the mules, in which the mules are described as "One black horse mule 9 yrs old weight about 1050 lbs. One black horse mule 9 yrs old weight about 1050 lbs. Both mules known as C. F. Moore mules." Said mortgages were executed on the 7th day of January, 1925, and filed for record in the probate office of Morgan county on February 10, 1925, at 1 o'clock p. m.

The defendant claimed title to the mules under a mortgage note, executed on the 1st day of January, 1925, and recorded on January 2, 1925, in the following words:

"On or before the 1st day of Oct. 1925, I, or we, promise to pay J. E. Dutton, at his office in Danville, Alabama, R. F. D. No. 1, the sum of $285.00, Dollars, for value received, with ―― interest from maturity and to secure the payment of this note and agree to pay a record fee.

"In case this note is not paid at maturity, in full, then I or we agree to pay in addition to above sum and interest, all cost and a reasonable attorney's fee, for the collection of same, and in consideration of value received, I or we, hereby waive, as to the payment of this debt, all right of exemption under the Constitution and laws of the State of Alabama, or any other State in the United States, and to secure the payment of this note, and also any other indebtedness, *I, or we, hereby grant, bargain, sell and convey to J. E. Dutton, his heirs and assigns, all my, or our live stock and personal property of every kind now in my or our, possession and owned by me, or us, and all live stock and personal property hereafter acquired, including horses, mules, colts, cows, yearling, hogs, wagons, buggies, farming implements and household goods,* and also my or our, entire crop of cotton and corn, and other produce, that I, or we, my, or our families, may produce or caused to be produced, including all rents, in the present year; also the crops raised each successive year until this debt is paid in full, also the following described property, to-wit:

"One black horse mule, 7 years old name poor boy;

"One black horse mule 8 years old known as the John Penn Mule; No. 10 P. and O. Turning plow, all or any of which property, after maturity, and non-payment of this note, in whole or in part, may be seized and sold by the said J. E. Dutton, his agents or assigns, at public auction for cash Danville, Alabama, R. F. D. No. 1, after posting for 3 days 3 or more written notices in as many public places in Danville, Alabama, R. F. D. No. 1. The proceeds of such sale to be applied first, to the expense of recording this note and mortgage, advertising, selling, conveying and attorney's fee; second, to the payment of the above sum and balance, if there be any, to the undersigned.

"It is agreed and understood that if through mismanagement, want of proper care, or for any other cause any of said property should deteriorate in value, or if any of said property should be traded or removed from the County, then the whole debt hereby secured shall become due immediately and the said J. E. Dutton is thereby authorized to proceed to foreclose said mortgage as above provided in case of default." (Italics supplied.)

There is no contention that the two mules specifically described in defendant's mortgage are the mules in controversy; the evidence showing that said mules so described were delivered by the mortgagor to defendant before the mortgagee's death.

The defendant's claim is based on the assertion that the mules in question were delivered to Harroway in the fall of 1924, and that said Harroway claimed to own them, while the plaintiff's contention was that they were delivered to said Harroway to try out for their feed during the winter, but that they

were not in fact sold to Harroway until the 7th of January, and at the time of the delivery of the mules the mortgages under which plaintiff claims were executed and delivered —concurrent acts. 12 C. J. 393; Hinton v. Hicks, 156 N. C. 24, 71 S. E. 1086.

The record shows that the trial court gave the affirmative charge for the plaintiff on the ground that the evidence was without dispute that Harroway did not have the title to the mules on January 1, 1925.

The point on which the case of Stewart v. Clemens, supra, is held by the majority to be unsound is that the general description of the property there involved is so indefinite that the recordation of the mortgage will not operate as constructive notice to third persons dealing in respect to the property.

The opinion of the majority is affected with two fundamental faults.

First, it proceeds on the assumption that a description sufficient as between the parties is also sufficient to operate as constructive notice to third persons by the recordation of the mortgage. That this assumption is without any basis is too well settled to require more than the citation of our own cases. The most recent to be noted is Abernathy v. Worthy et al., 221 Ala. 527, 129 So. 472, in which my brother, Mr. Justice Bouldin, the author of the majority opinion, concurred. There it was observed: "As between the parties to the transaction, the mortgagor and mortgagee, the rule of certainty in description is not so exacting as when a third party is involved. Such was the holding of this court in Wood v. West Pratt Coal Co., 146 Ala. 479, 40 So. 959; Cragin v. Dickey, 113 Ala. 310, 21 So. 55, and recognized by the current of authorities elsewhere. 5 R. C. L. p. 429."

The majority opinion refers to the rule stated by Judge Freeman, quoting a quoted excerpt therefrom, found in Stickney v. Dunaway & Lambert, 169 Ala. 468, 53 So. 770. The quotation in full is this: "As was said in the beginning, a description which is sufficient between the parties to the mortgage may be utterly insufficient as against third persons; for, as between the parties, a specific and particular description is not necessary, and the mortgaged articles may be shown by parol evidence, while the mortgage, to be effectual as against third persons, must point out the subject-matter of it, so that such persons by it, together with such inquiries as the instrument suggests, may be able to identify the property intended to be covered." This statement is followed by citation of authorities and a number of illustrations as to insufficiency. 14 Am. St. Rep. 242, note.

The second fault in the majority opinion is that it assumes that the recordation of the mortgage carries constructive notice only to persons dealing with the mortgagor, and stresses the statements "all my or our," "me or us." Then the opinion proceeds: "So, the question is: Does a mortgage covering all the live stock * * * owned by the mortgagor, when duly recorded, carry constructive notice to *one dealing with the mortgagor* as to live stock in his possession?" (Italics supplied.)

This assumption, of course, is unsound in law, as a mere citation of our cases shows— the rule is "that the registration referred to in it [the statute] is notice to all the world," and affects subpurchasers as well as purchasers direct from the mortgagor. Chadwick v. Russell, 117 Ala. 290, 23 So. 524; Stickney v. Dunaway & Lambert, supra; Williams v. Vining, 150 Ala. 482, 43 So. 744; Argo v. Sylacauga Mercantile Co., 12 Ala. App. 442, 68 So. 534; Carrol Mercantile Co. v. Folmar, 14 Ala. App. 378, 70 So. 985.

This rule is the basis for excluding "the words of the parties to it" (the mortgage) as data putting one dealing with respect to the property on inquiry. The rule of exclusion was stated and approved by this court in Wood et al. v. West Pratt Coal Co., 146 Ala. 479, 40 So. 959, citing as authority Barrett v. Fisch, 76 Iowa, 553, 41 N. W. 310, 14 Am. St. Rep. 238.

The question involved in Barrett v. Fisch, supra, was whether or not the description of the property in a mortgage—a sorrel horse— was sufficient, when recorded, to carry notice to a third party dealing in respect to the horse, and in disposing of the case the court observed: "It was contended, however, that the recital as to the mortgagor's place of residence, and the provisions as to the place of sale, were sufficient to suggest an inquiry, which, if followed, would have led to the identification of the property intended to be covered by the mortgage. But this position cannot be sustained. It could be understood from the recital, perhaps, that the mortgage was intended to cover property in Sioux county. But knowledge of that fact would not aid one who was seeking information as to the particular property intended." 76 Iowa, 554, 41 N. W. 310, 14 Am. St. Rep. 238.

I submit that the terms, *"all my or our live stock"* or *"belonging to me or us,"* terms applicable alike to all persons and groups, are wholly insufficient, under these authorities, to incite or require inquiry, and the authority of Wood v. West Pratt Coal Co., supra, cannot be wiped aside by the general observation of the majority opinion that: "There are cases where a number of live stock or other chattels are called for and on inquiry it appears they are only a part of a collection, group, or herd, with no descriptive data whatever to distinguish one from the other. This was an element in the case of Wood v. West

Pratt Coal Co., 146 Ala. 479, 40 So. 959." That was not the point of decision in that case. The point was that the description was too indefinite to put one on notice who examined the record.

To the same effect: "A mortgage by country traders of 'our entire stock of dry goods, boots, shoes, hats, clothing and notions, and such other goods are usually kept in a first-class country store,' without any sort of designation of the whereabouts of the goods, or *any other language of identification*, is not sufficient description" to put a third person on notice. (Italics supplied.) Jones on Chattel Mortgages, p. 87, § 55; Jaffrey v. Brown (C. C.) 29 F. 476; Tootle v. Lyster, 26 Kan. 589.

Such descriptions as "all the personal property of the mortgagor" (Harris v. Allen, 104 N. C. 86, 10 S. E. 127), and "*our* stock of dry goods and accounts due" (Sperry, Watt & Garver v. Clarke, 76 Iowa, 503, 41 N. W. 203), have been held insufficient to put a third person on inquiry.

The residence of the mortgagor in the case at bar is not stated. Therefore one dealing in respect to property capable of being covered by the dragnet would in every instance be compelled to ascertain at his peril whether or not the mortgagor had ever owned or asserted any claim to it. Such inquiry could not be confined to any particular community or county, but would extend "to the world." Chadwick v. Russell, supra.

Aside from the foregoing considerations, no satisfactory reasons can be given why it was necessary or proper to specifically describe "one black horse mule 7 years old named poor boy," and "one black horse mule 8 years old known as the John Penn Mule," and fail to describe the mules in controversy, if in fact Harroway owned them and intended to mortgage them. The mules here involved were just as capable of being described by physical attributes as those that were described. In fact, it appears on the face of the paper itself that the general description, printed no doubt in the face of the mortgage note, was designed as a mere dragnet and catch-all to overreach the credulous and ignorant, and acquire a colorable claim to property which the mortgagor did not intend to incumber, for the purpose of hindering other creditors. Such dragnet descriptions in chattel mortgages have been, and should be, condemned in every instance. Muir v. Blake et al., 57 Iowa 662, 11 N. W. 621; Pingrey on Chattel Mortgages, p. 118.

Not only this, the specific description written into the paper is inconsistent with the general printed description. "It is a rule of interpretation of deeds or other instruments, partly printed and partly written, that the

written portions are presumed to have commanded the stricter attention of the parties; and if there is an irreconcilable conflict between them, the writing prevails over the printed matter. 2 Devl. Deeds, § 837; Bish. Cont. § 413. This is but the teaching of human experience crystalized into law." Thornton, by next Friend, v. Sheffield & Birmingham R. R. Co., 84 Ala. 112, 4 So. 197, 199, 5 Am. St. Rep. 337.

To approve such a description as here involved is to encourage cupidity in the unscrupulous and grasping, and incite them to fraudulent practices, leaving the victim at the mercy of the unscrupulous dealer, unless he can show that his signature was obtained to the paper by fraudulent misrepresentations as to its contents (Beck & Pauli Lithographing Co. v. Houppert & Worcester, 104 Ala. 503, 16 So. 522, 53 Am. St. Rep. 77); for certainly no sane person would sign such a paper, unless induced thereto by fraud, or driven thereto by dire necessity. And one who has been imposed on by such deception may resort to perjury to escape its consequences. In my humble judgment, any decision that foreshadows such consequences cannot be sustained either in law or morals.

The rule of Stewart v. Clemens, supra, is sound and salutary, and should not be overruled.

I therefore respectfully dissent.

THOMAS, J., concurs in the foregoing dissent.