BI-SPOOL SEWING MACHINE COMPANY *vs.* ACME MANUFACTURING COMPANY.

Suffolk.    January 20, 1891. — March 2, 1891.

Present: FIELD, C. J., W. ALLEN, C. ALLEN, HOLMES, & MORTON, JJ.

*Corporation — Vote — Authority of President — Contract — Ratification.*

A vote of a newly formed manufacturing corporation contemplated the payment of royalties to and the purchase from an existing corporation, in addition to tools and material, of " all the other personal estate of said corporation, giving in payment therefor" shares of stock in the new corporation, to be issued to the president of the old corporation as trustee for the parties in interest, any balance of such shares remaining "after paying the liabilities" of the old corporation to be issued to the treasurer of the new corporation.    A written contract, purporting to be made between the two corporations, was signed by their presidents, who were the principal creditors of the old corporation, by which the new corporation, in consideration of the transfer of all the stock, tools, material, and machinery of the old one, and of its agreement to license the new one under

all its patents, agreed to pay, besides royalties, all the debts of the old corporation. No director or stockholder of the new corporation besides the president knew anything of the particulars in which the contract departed from the terms of the vote. *Held,* in an action on the contract, that there was no evidence for a jury of the authority of the president of the new corporation to make or sign the contract, or of its ratification.

CONTRACT, for breach of an agreement in writing. Trial in the Superior Court, before *Mason,* J., who ordered a verdict for the defendant; and the plaintiff alleged exceptions. The facts appear in the opinion.

*H. W. Chaplin & C. I. Giddings,* for the plaintiff.

*F. Paul,* for the defendant.

HOLMES, J. This is an action on a written contract, purporting to be made between the plaintiff and the defendant, by which the defendant, in consideration of a transfer to it of all the plaintiff's stock, tools, material, and machinery, and the plaintiff's agreement to license the defendant under all its patents, agrees to pay all the plaintiff's debts, as by schedule, amounting to $18,261.67, and to pay royalties. The defendant's name is signed by its president, Joseph F. Paul, and the question is whether there was any evidence of the president's authority to make or to sign the contract.

On April 6, 1887, the plaintiff held a stockholders' meeting at Kittery, Maine, when votes were passed which may be assumed to authorize a contract in the foregoing terms. At the same time and place, the same or nearly the same people organized the defendant corporation " to manufacture sewing machines under license dated ———, A. D. 1887, from the " plaintiff, and for other purposes. A vote fixed the date of the license as April 6. The following votes also were passed:

" Voted, to purchase of the ' Bi-Spool Sewing Machine Company,' a corporation duly organized under the laws of the State of Maine, all the material now on hand, together with all the tools and sewing machines, completed and in process of completion, together with all the other personal estate of said corporation, giving in payment therefor the sum of $99,950, in 9,995 shares of the capital stock of the corporation, at the par value of ten dollars per share, to be issued to William Claflin, as trustee for the parties in interest, and this corporation further agrees to pay, on and after July 1, 1887, a royalty of twenty-five cents on

each and every machine manufactured and sold, and the president and treasurer are hereby authorized and instructed to issue said stock to said Claflin, in accordance with the provisions of the preceding vote, and the balance of said 9,995 shares of stock remaining in the hands of said trustee after paying the liabilities of the Bi-Spool Sewing Machine Company shall be issued to the treasurer of this corporation."

" Voted, that the board of directors be, and hereby [are], authorized to carry out the foregoing vote, by the execution of the necessary papers, whenever an offer correspondent thereto shall have been received from the said ' Bi-Spool Sewing Machine Company.' "

It is impossible to say that the first of these votes, which the second authorizes the directors to carry out when an offer corresponding to it shall have been received, corresponds in terms to the plaintiff's vote. The plaintiff contemplates an absolute undertaking by the new company to pay its debts. The vote of the new company, if it authorizes any undertaking to pay the plaintiff's debts, authorizes it only out of, or by means of, the new company's stock. The plaintiff had only one object in view. The defendant, although it concocted a plainly futile scheme, and although probably it did not see the inconsistency with what the plaintiff voted, had more than one object. It wished to get all its stock issued as full paid stock, to provide for paying the plaintiff's debts, and to reserve to itself the benefit of whatever stock was not necessary for that purpose. Accordingly it first voted to issue all its stock, except five shares taken by the incorporators, in payment for the plaintiff's material, tools, sewing machines, "together with all the other personal estate of said corporation," (which is wider than the plaintiff's offer,) and thus give to the stock for the moment the look of being fully paid; but the stock was to be issued to William Claflin " as trustee for the parties in interest," and then the vote goes on, that the balance of the shares remaining in the trustee's hands after paying the plaintiff's liabilities shall be issued to the defendant's treasurer. So that, after a moment's pretence of issuing all this stock to the plaintiff, it appears that in fact only so much goes to it as will pay its debts. We do not see any foundation for the argument that the stock is to be security for

an absolute undertaking to pay, and the defendant's vote is otherwise so remote from the plaintiff's that we spend no more discussion upon it.   It is very likely that the parties present thought they had done all that was necessary to make a contract, except the merely formal steps.   But this is inference, and, if true, is only another evidence that they acted in a loose and inaccurate way.   It cannot be allowed to outweigh the divergence between the plaintiff's and the defendant's votes.

The foregoing, whether legal or illegal it does not matter, were the only votes from which Paul, the defendant's president, could have derived any express authority.   Therefore, if the defendant is bound, it must be on the ground of a subsequent ratification.   With regard to the question whether there was any evidence of ratification, it is to be observed that this is not the case of a purchase by an officer where there has been no vote, and when knowledge that property has come to the defendant's hands might be notice of the terms of the contract.   The defendant's vote contemplated a purchase upon certain terms. What the plaintiff must show is assent to a purchase upon different terms, and something more is necessary to prove that than knowledge that there has been a purchase.   See *Dedham Institution for Savings* v. *Slack*, 6 Cush. 408.

When the corporation was formed, the articles of association were signed by Joseph F. Paul, William M. Paul by Joseph F. Paul his attorney, Henry R. Gardner, James E. Martyn, and John J. McNutt by Martyn his attorney.   Each subscribed for one share, and the five shares were paid for by Joseph F. Paul. These five persons, and Mr. Claflin, the trustee, were the only persons who appeared on the books of the company as stockholders having the legal title to shares before or at the date of the alleged contract, and we will take it in favor of the plaintiff that Gardner and Martyn had ceased to be members before that date. The other two, however, one of whom, McNutt, was a director, knew nothing of the contract, — nothing, that is to say, of the particulars in which the president, very likely without realizing it, had departed from the terms of the defendant's vote.   The evidence seems to us plain on that point.   It is argued that McNutt and William Paul were only figure-heads, and that, as they took their shares only to please Joseph F. Paul, and as

the latter paid for their shares, in the first instance at least, he might be found to have had authority to represent them. But, whatever their motives, they had assumed the responsibilities, and must be taken to have had the rights of stockholders, in the absence of further evidence. See *England* v. *Dearborn*, 141 Mass. 590.

On May 30, 1887, all the stock of the defendant except the five shares just mentioned was transferred to Mr. Claflin, under the defendant's vote. Pursuant to its ambiguous but intelligible position, subscriptions were taken to this stock, we presume upon the theory that there was much more than enough to satisfy the plaintiff's creditors, or else that the money as paid in would take the place of the stock and be applicable to the plaintiff's debts, as an identified fund, subject to some struggles on Mr. Paul's part not to have it applied so strictly as to prevent the new company from going on. The subscribers were Neil McNeil, E. B. James, Patrick Donahoe, and Samuel E. Sewell. The evidence is, that McNeil and James had subscribed before May 20, 1887, when the directors voted to call in twenty-five per cent of the stock subscriptions, — a vote which would have been meaningless if no subscriptions had been made. The date of Donahoe's subscription is not plain. Sewell died, and his subscription seems to have been cancelled. McNeil and James knew of the defendant's vote to purchase, and knew of nothing else. Later, more stock was taken by creditors of the plaintiff, but they do not require particular mention. At and after the date of the contract the defendant's directors were the above mentioned Joseph F. Paul, James, McNeil, and McNutt, so that, whether a ratification by the stockholders or by the directors be relied on, it is enough to say that it is not made out. We cannot treat Joseph F. Paul, the president, as the whole corporation for the purpose of ratifying his own act, any more than for that of conferring authority upon himself to make the contract in the first instance. *Murray* v. *Nelson Lumber Co.* 143 Mass. 250.

The transaction attempted between the plaintiff and the defendant was not of a kind to create much anxiety as to the effect of our decision upon either party. But the plaintiff cannot complain of having been misled. Mr. Claflin, who signed the agreement on its behalf as its president, was the trustee men-

tioned in the defendant's vote, and held the stock under that vote when he signed.  He had notice, therefore, of that vote, and was put on inquiry for the authority justifying Mr. Paul in doing what he attempted to do.  It is to be observed as a reason for strictness, although there is no question of the good faith of both gentlemen, that the principal debts of the plaintiff were due to Messrs. Claflin and Paul, the parties who signed the agreement in suit.  As the plaintiff makes no argument touching what was done after the suit was brought, we do not discuss it.                                   *Exceptions overruled.*