[Civ. No. 97.    Third Appellate District.—October 17, 1905.]

## WICKERSHAM BANKING COMPANY, Appellant, v. MRS. CHARLES NICHOLAS, P. S. EIGHOLZ, and HEINE PIANO COMPANY, Respondents.

CORPORATIONS—NOTES TO AGENT—UNAUTHORIZED INDORSEMENT OF COR-
PORATE NAME—NONLIABILITY OF CORPORATION.—Where notes for
a piano sold by an agent of a piano company were taken in the
name of the agent, who indorses them for value to a banking com-
pany, and without the authority or knowledge of the piano com-
pany indorsed its name upon the notes, and reported it as a cash
sale, and received his commission on that basis, the piano company,
which did not ratify the indorsement, and was not estopped to
dispute the agent's authority, is not liable upon the indorsement,
regardless of the negotiability of the notes.

ID.—INDORSEMENT BY STRANGER TO NOTES—INDORSEE BOUND TO KNOW
AUTHORITY.—The banking company, as indorsee of the notes, in
accepting the indorsement of the piano company as a stranger to
the notes, was bound to know whether the indorsement was au-
thorized.

ID.—COLLECTION OF DRAFT FOR PART OF MONEY.—The fact that the
agent who negotiated the notes executed to him took a draft for
part of the money in the name of the company, and that the com-
pany collected the draft, did not necessarily imply that the com-
pany had knowledge of the transaction as to the execution and in-
dorsement of the notes.

ID.—SUPPORT OF FINDINGS—EVIDENCE FOR DEFENDANT—CONFLICT.—
Where the findings were for the piano company, and the court ac-
cepted the evidence for that defendant, showing that the president
of the piano company alone was authorized to sign its name, and
that the company was not estopped to deny the authority of the
agent, and did not ratify his action, and there was no evidence
of his ostensible agency, the findings are sufficiently supported, not-
withstanding any conflicting inference that the court might other-
wise have drawn from other testimony and other circumstances in
the case.

ID.—LIABILITY OF MAKER OF NOTES—ERRONEOUS JUDGMENT—REVERSAL.
Where the court found that the notes were executed by the maker
thereof, and that the plaintiff is the owner and holder thereof,
and that the same have not been paid, a judgment for the maker
was erroneous, and must be reversed with direction to enter judg-
ment against the maker as prayed for in the complaint.

APPEAL from a judgment of the Superior Court of Sonoma County, and from an order denying a new trial. A. G. Burnett, Judge.

The facts are stated in the opinion of the court.

Lippitt & Lippitt, for Appellant.

R. M. Swain, for Respondent Nicholas.

A. Barnard, for Respondent Eigholz.

Curtis Hillyer, for Respondent Piano Company.

CHIPMAN, P. J.—This is an action upon two certain written instruments, one for $150 and one for $125, and, except as to the amount and date of maturity, both were in the form following:

"$150.00.                                 Petaluma, June 20th, 1901.

"For value received, thirteen months after date I promise to pay to the order of P. H. Eigholz one hundred and fifty dollars in United States gold coin, with interest in like gold coin at the rate of 6 per cent per annum. The consideration of this and other notes is a Heine piano, No. 11,334, which I have received of said P. H. Eigholz. Nevertheless, it is understood and agreed by and between me and said P. H. Eigholz or his assignees, that the title to the above-mentioned property does not pass to me, and that until all said notes are paid, the title to the aforesaid property shall remain in the said P. H. Eigholz, who shall have the right, in case of nonpayment at maturity of either of said notes, without process of law, to enter and retake, and may enter and retake immediate possession of said property, wherever it may be, and remove the same. I further agree not to remove said piano from Petaluma without the consent of P. H. Eigholz or the party to whom this note may be assigned by indorsement. Payable at Petaluma.     Due July 20th, 1902.
             (Signed)     "MRS. CHAS. NICHOLAS."
Indorsed: "Heine Piano Co., per P. H. Eigholz."

The action was dismissed as to the defendant Chas. Nicholas. Mrs. Nicholas had purchased the piano above re-

ferred to from the defendant piano company at the agreed price of $350, payable in installments, of which $50 was paid on delivery of the piano, the contract being the common form by which the title to the piano was to remain in the company until all the installments were paid. Appended to the agreement of sale was a provision that the price would be reduced to $325, "if paid by July 20th, 1902, in accordance with two collateral notes of $125.00 and $150.00 granted by Mrs. Nicholas of even date herewith," and was signed "Heine Piano Co., J. A. Swan, Mgr." The notes in question were given pursuant to this provision. The court found that Mrs. Nicholas executed the notes "in consideration of the reduction stated in said contract and agreed to by the said Heine Piano Company," and delivered the notes to Eigholz; that Eigholz "wrote upon the back of each of said instruments the words 'Heine Piano Company, per P. H. Eigholz,' and delivered the same to the plaintiff for a valuable consideration"; that the instruments, at maturity, were presented to the maker and payment demanded and notice of protest given against the defendants Heine Piano Company and Eigholz; that the money paid by plaintiff for said notes was paid to Eigholz and by him paid to the piano company with plaintiff's knowledge, but that the piano company had no knowledge, at the time Eigholz paid the money to it, of the existence of the said notes or of their transfer to plaintiff by Eigholz, or of the indorsement of the name of the piano company thereon; and that the company is not estopped to deny the agency of Eigholz to make the said indorsement. It was further found that Eigholz had no authority to indorse said instruments or any instruments, on behalf of the piano company, or to execute and deliver or indorse any commercial paper on behalf of said company; that he "was a salesman in the employ of said defendant [the company], and that his powers as agents were only those powers which were implied from his employment by the defendant Heine Piano Company as a traveling salesman"; that the instruments sued upon "are not negotiable promissory notes, or promissory notes at all." Defendant had judgment from which and from the order denying its motion for a new trial plaintiff appeals on statement of the case.

Appellant relies on its specifications to the insufficiency of the evidence to justify the findings, as follows: (a) That at the time of the payment to the piano company of the money received on the notes, it had no knowledge of their existence or of the transfer by Eigholz to plaintiff or of the indorsement thereon in the company's name by Eigholz; (b) that Eigholz had no authority to indorse said instruments or any instruments on behalf of the company, or to execute or deliver' or indorse any commercial paper on its behalf; (c) that said instruments are not negotiable instruments or promissory notes.  Counsel for appellant have devoted much intelligent attention to the proposition that the instruments in question were negotiable promissory notes; their brief leaves nothing to be desired by way of authority or in point of reason from their view point.  The conclusion we have reached, however, makes it unnecessary to decide the question. If Eigholz, as the court found, had no authority to use the Heine Piano Company's name as indorser of the instruments sued upon, and the company was ignorant of their existence and of the indorsement of them in its name when the money was paid to the company, and was not estopped to deny Eigholz's agency to make the indorsement and did not ratify the same, we do not see how the company can be held, whatever view may be taken as to the character of the instruments.

There was evidence that Eigholz and one Swan (not a party) were salesmen of the piano company and were compensated by a weekly salary and a commission of ten per cent, where pianos were sold on the installment plan, and fifteen per cent on cash sales; that neither of them was authorized to sign the company's name to commercial paper, and that the only person connected with the company who had such authority was the president of the company, Mr. Heine, who in fact was the company; that Eigholz and Swan came into possession of the instruments in question in making a sale to Mrs. Nicholas; Swan prepared the papers, Eigholz made the indorsement, and Swan drew the money from the bank, took a draft in favor of the piano company for the amount less the discount and commissions, and sent the draft to the piano company, as had been done in other instances, turning it in as a cash sale.  Eigholz testified that he explained the whole transaction to Mr. Heine, who ratified

it. But this was flatly denied by Heine, and he testified that the first knowledge he or the company had that these notes were in existence was when they were presented for payment. He testified to the authority given Eigholz and Swan which did not empower them to discount the company's paper; that the company never discounted notes and had no knowledge of this transaction until the notes were presented for payment; and that Eigholz never explained the transaction to him, but that it was reported as a cash sale, and the commission paid on that basis. He further testified that when he received the money it closed the deal with Mrs. Nicholas. There was no evidence from which the court would have been justified in finding that an ostensible agency existed, and in accepting defendant's evidence, the court could not have found otherwise than it did as to the estoppel, nor could it have found otherwise as to ratification. Daniel on Negotiable Instruments, fifth edition, section 316, is cited to the effect that when the principal, with full knowledge of all the circumstances, deliberately ratifies the lawful act, doings, or omissions of another, assuming to act as his agent, he will be bound thereby as fully as if they had been done originally by his authority. This statement of the rule may not be disputed. The difficulty here is that the court found, on sufficient evidence, that the principal (Heine Piano Company) had no such, or equivalent, knowledge, and hence there could have been no ratification.

Appellant argues with some force that, inasmuch as Heine knew of the contract and of the appended provision relating to the notes, he must have known when the money was sent in that it came from the discounted notes, especially so, as he testified that the receipt of the money closed the entire transaction with Mrs. Nicholas. Against the inference of Heine's full knowledge arising from these facts, which appellant contends is irresistible, is Heine's positive testimony that he knew nothing concerning the discounting of the notes, but that the money was reported as coming from a cash sale. The trial court accepted the testimony of Heine as against the inference which it might otherwise have drawn from the testimony and other circumstances in the case. Under the familiar and well-settled rule of this court, we cannot interfere. It does not appear that plaintiff dis-

counted the notes upon any representations even of Eigholz or Swan that either of them had authority to discount the note or sign the name of the company. The instruments were payable to Eigholz alone and not in any representative capacity, and the record is silent as to any inquiry by plaintiff of Eigholz's authority when he assumed to use the name of the piano company as indorser; plaintiff seems to have taken it for granted that Eigholz had the authority which he exercised, and if he made any representations in this regard they do not appear. It is true that the instruments mentioned the consideration to be "a Heine Piano No. 11,334," but Eigholz may have owned the piano and sold it on his own account, so far as plaintiff knew, when it discounted the paper. Indeed, the instruments recite that title to the piano is to remain in Eigholz until they were paid. In accepting the indorsement of a stranger to the paper (the piano company), it was plaintiff's duty to know that the indorsement was authorized. Nor did the fact that Eigholz took a draft for part of the money in the name of the company, and that the company collected the draft, necessarily imply that the company had full knowledge of the transaction.

There is no brief on file for respondents other than the piano company. The judgment is that plaintiff take nothing by the action. The specifications are directed exclusively to the question of the piano company's liability. But it is claimed that the maker of the notes should be held liable as well as the piano company. The court found that Mrs. Nicholas executed the instruments, that the plaintiff is the owner and holder thereof, "and that the same have not been paid nor any part thereof." We cannot see upon what theory the defendant, Mrs. Nicholas, escapes liability, nor why judgment should not have been given against her. As to defendant Eigholz, plaintiff claims nothing, and we suggest nothing as to his liability. But certainly, as between the owner and holder of the evidence of indebtedness and the maker who has received full consideration, there is a clear and unmistakable liability. Mrs. Nicholas, in her answer, admitted the execution of the instruments, but averred that there was an agreement between her and Eigholz that no interest was to be charged, and that if the notes provide for the payment of interest it was without her knowledge or con-

sent. She submitted no evidence in support of this issue. The court found that she executed and delivered the instruments to Eigholz, which is a finding on the issue sufficient to support a judgment in connection with the other findings.

The judgment in so far as it affects the defendants Heine Piano Company and Eigholz is affirmed, and as to defendant Mrs. Charles Nicholas it is reversed, with directions to enter judgment against her as prayed for in the complaint. The order denying the motion for a new trial is affirmed.

McLaughlin, J., and Buckles, J., concurred.