SINGER SEWING MACHINE COMPANY, APPELLANT, V. JOHN L. BARGER ET AL., APPELLEES.

FILED NOVEMBER 27, 1912.        No. 16,830.

1. **Principal and Agent**: DISAFFIRMANCE OF ACTS OF AGENT. "A principal must disaffirm the unauthorized act of his agent within a reasonable time after such act comes to his knowledge, or he will be bound thereby." *Farmers & Merchants Bank v. Farmers & Merchants Nat. Bank*, 49 Neb. 379.

2. ———: RATIFICATION OF ACTS OF AGENT. Where, in settlement of a balance due upon the sale of a sewing machine, what is termed a "single payment note" is given by the purchaser for such balance, and said note provides that the machine is to remain the property of the seller until full payment of the purchase money, and the holder of such note, with notice that it has been altered by raising the amount, brings an action of replevin upon the note in its altered condition, and endeavors to recover in such action, he thereby ratifies the act of alteration.

3. ———: ALTERATION OF NOTE BY AGENT. And, in such a case, if it is established that such note was altered by the agent of the holder, who sold the machine and obtained the note from the purchasers, after the latter had signed the same and without their knowledge or consent, the plaintiff in such action cannot recover.

APPEAL from the district court for Cedar county: GUY T. GRAVES, JUDGE. *Affirmed.*

*Claude S. Wilson,* for appellant.

*J. C. Robinson, contra.*

FAWCETT, J.

This is an action of replevin brought in justice court in

Cedar .county and appealed to the district court for that county. From a judgment in favor of defendants, plaintiff appeals.

The property replevied was a sewing machine sold by plaintiff through its agent, Poole, to the defendants. The evidence shows that the price fixed upon the machine was $60; that plaintiff took as part payment an old machine, and, according to the testimony of defendants, was to receive $35 in addition, of which $5 in cash was paid at the time. Poole testified that defendants were to pay $39, and paid $5 in cash at the time. What is termed a "single payment note" was signed by defendants and delivered to Poole. This note provided for the payment of the difference between the two machines one year after date, and also provided that the machine, for the purchase money of which the note was given, should remain the property of the company until full payment of the purchase money, with interest and costs. Defendants testified that when they signed the note it was drawn for the sum of $30. When the note was about to mature, it was sent to a bank for collection. Defendants were notified of that fact, and were requested to make payment at the bank, the notice stating that the note was for $34. The defendant John L. Barger went to the bank and asked to see the note, stating that there must be something wrong about it. When the note was shown to him, he at once stated that the amount of the note had been raised from $30 to $34, and refused to pay it, stating that he was willing to pay the $30, but would not pay any more. The bank reported to plaintiff what had been said, and received in return a letter from plaintiff, in which it is said: "We accepted this note with a balance of $34 and had no thought but what it was correct. If Mr. and Mrs. Barger say they were to pay only a $30 balance you may collect same and we will settle with our Mr. Poole. Kindly make arrangements with Mr. Barger to let us have the note to help us make our settlement." When notified of the statement of plaintiff, defendant refused to pay the $30, and

upon the trial gave as his reason for such refusal that he was not willing to pay the $30 unless he got his note. Some time later a representative of plaintiff called at the home of the defendants and demanded payment of the $34, and, upon payment being refused, said he was going to take the machine. This the defendants would not permit him to do. The next step in the matter was when another agent of plaintiff, with a constable, called at the home of defendants and again demanded payment of the note. Defendants refused to make payment, giving as their reason the raising of the note from $30 to $34. Plaintiff's agent thereupon offered to take the $30 in settlement of the matter, and he testified that he made that offer without adding anything for costs. This testimony is contradicted by defendants, who state that he only offered to take the $30 on condition that they would pay the expenses of himself and the officer for coming after the machine, which amounted to something like $6, which defendants refused to do. Thereupon the constable served the writ of replevin in this action and took the machine.

Upon the trial defendants both testified unequivocally that at the time they signed the note it was drawn for $30. The note shows upon its face that the word "four" must have been written into the note after the word "thirty," after the note had been drawn. An examination of the original note, which is before us, shows that as originally drawn it read "thirty no-100 dollars." Subsequently there was written in between the word "thirty" and the "no-100 dollars" the word "four." That this was written in afterwards is evident from the manner in which the last letter of the word "four" is crowded up against the line between the word "no" and the figures "100." Plaintiff's agent admits that he wrote the word "four" in after the other part was written, and explains his act in doing so by testifying that the defendants were to pay $9 in cash and give a note for $30, and that after he had the body of the note written, but before writing the figures $34 in the

upper left-hand corner thereof, defendants said they only had $5 cash on hand; that he thereupon agreed to accept the $5, and raised the note to $34 before it was signed by defendants. This testimony is positively contradicted by both defendants, who say that there never was any talk about $9 or $39, but that the amount was to be $35, $5 in cash and a note for $30. Counsel for plaintiff in his brief says: "The question then reduces itself to two propositions: (1) Has the contract been altered since it was signed? and, if so, (2) what effect has such alteration had upon the rights of the parties to this action?" He then concedes that there were only three persons present, viz., Poole and the two defendants, and then says: "The contract shows no alteration upon its face; and, while appellant still contends that the same had not been altered, yet, inasmuch as a jury found against the appellant upon conflicting evidence, we realize that it would be a waste of time to argue to this court that phase of the question. For the sake of argument, then, let us concede that said contract was altered as alleged; we still contend that the judgment of the district court must be reversed."

In the light of the admissions of counsel, which are eminently proper in the face of the record, his contention must fail. It is argued, and authorities cited in support of the argument, that where an agent has no authority, either express or implied, to make an alteration of the character under consideration, it is simply a spoliation by a stranger to the contract, and does not impair the validity as it originally stood. The trouble with plaintiff's contention and with his authorities is that they do not fit the facts established at the trial. We think the rule of law applicable here is that if the alteration is made by an agent, while in the transaction of the principal's business and within the scope of his authority, then the act of the agent is the act of the principal. The cases supporting this rule are numerous and hardly call for citation. Among them may be noted authorities cited in defendants' brief, among which are *Kingan & Co., Limited, v. Silvers,* 13

Ind. App. 80; Mechem, Law of Agency, sec. 739; *Denver, S. P. & P. R. Co. v. Conway,* 8 Colo. 1, 5 Pac. 142; *Law v. Grant,* 37 Wis. 548, reaffirmed in *Matteson v. Rice,* 113 Wis. 328; *Rhomberg v. Avenarius,* 135 Ia. 176. We think in this case the act of Poole, who, the evidence shows, was "managing salesman" of the plaintiff, and made the alteration while engaged in the service of the plaintiff in this particular transaction, is sufficient to bind the plaintiff.

But, even if this were not so, there is another rule of law from which we are unable to see any escape by plaintiff. The evidence shows that, after plaintiff had due notice of the alteration of the note, it failed to disaffirm the unauthorized act of its agent, but, on the contrary, affirmed his action by taking the machine in a replevin action, under the authority given by the altered note. It being established by the verdict of the jury that the note had been altered, it was void in its entirety, and plaintiff obtained no rights under it. Without that document to aid it, plaintiff had no authority to take the sewing machine, for, if no valid contract, in the terms and of the kind relied upon, was ever signed by defendants, then the transaction between plaintiff and defendants was simply an ordinary sale of a sewing machine on one year's time. By such a sale plaintiff would part with its title to the machine, and its only legal remedy, in the event of a failure by defendants to pay the balance due, would be by an ordinary action at law and a collection upon execution. "A principal must disaffirm the unauthorized act of his agent within a reasonable time after such act comes to his knowledge, or he will be bound thereby." *Farmers & Merchants Bank v. Farmers & Merchants Nat. Bank,* 49 Neb. 379. "The acceptance or retention by the principal, after knowledge of the facts, of the fruits of an unauthorized act of an agent is a ratification of the agent's act, and it relates back to the time of the act and makes it as if the agent had been empowered to perform it at its date, and the principal is bound in all respects as if he himself had been the actor." *Johnston v. Milwaukee &*

*Wyoming Investment Co.,* 49 Neb. 68. "When the holder of a note had notice that it had been altered by changing the amount, and with such notice sued upon it in its altered condition, and endeavored to recover thereon, *held,* that he thereby ratified the act of alteration, and that the court did not err in refusing to permit him, after trial, to amend by counting on the note as originally made." *Perkins Windmill & Ax Co. v. Tillman,* 55 Neb. 652. "A principal must adopt the unauthorized contract of his agent as a whole, or not at all. He cannot adopt the portion that is beneficial and reject the remainder." *Citizens State Bank v. Pence,* 59 Neb. 579.

It is contended that the court erred in giving instruction No. 2. In that instruction the jury were told that the burden was upon the plaintiff to prove every material allegation contained in its petition, and, if the jury found the evidence bearing upon any material allegation was evenly balanced, or that it preponderated in favor of defendants, plaintiff could not recover. The instruction is not open to the construction placed upon it by plaintiff. It is next contended that the court erred in giving instruction No. 6. This instruction should be considered in connection with No. 5, and when so considered it is free from error. It is further urged that the court erred in not giving instruction No. 1, requested by plaintiff, as follows: "You are instructed that if you find from the evidence, exclusive of the written instrument in question, that at the time of the commencement of this action the title and right of possession of the property replevied was in the plaintiff, then your verdict should be for the plaintiff, regardless of any alleged alteration in the written contract." This instruction was clearly bad, and was properly refused. No right of possession of the property replevied had been shown, "exclusive of the written instrument in question."

The verdict of the jury being conclusive as to the fact that the note was materially altered after its execution by the defendants, and plaintiff having ratified the unau-

thorized act of its agent by bringing this action upon such fraudulent note, the trial court did not err in overruling the motion for a new trial and entering judgment upon the verdict.

AFFIRMED.