# Brooks *v.* Greil Bros. Co.

### *Assumpsit.*

(Decided December 17, 1912.   60 South. 389.)

*Money Had and Received; Husband and Wife; Rent; Bona Fide Purchaser.*—A wife who gives her husband the entire management of her plantation, with power to collect rent cotton and sell same, knowing that the husband is not using the rent to pay off a mortgage as directed by her, could not recover the rent from a third person obtaining the rent cotton from the husband, but not participating in his fraud, although the third person knew that the cotton came off the land of the wife, but believed that the husband had authority to do what he did, or that the wife ratified his act each year.

Dowdell, C. J., and Simpson and Sayre, JJ., dissent.

APPEAL from Montgomery Circuit Court.

Heard before Hon. W. W. PEARSON.

Action by Mary E. Brooks against Greil Bros. Company for money had and received. Judgment for defendant and plaintiff appeals. Affirmed.

POWELL & HAMILTON, for appellant. Under the facts in this case the action for money had and received will lie as the possession was not adverse to the true owner. —*Price v. Pickett,* 21 Ala. 741; 27 Cyc. 865. No estoppel is shown on the part of Mrs. Brooks to maintain this action.—21 Cyc. 1240; *First Nat. Bank v. Leland,* 122 Ala 295; *Brown v. Bamberger,* 110 Ala. 342; 31 Cyc. 1252; *Corry v. Jones,* 114 Ala. 502.

STEINER, CRUM & WEIL, for appellee. In acquiring the notes given by Crenshaw to Brooks appellees became the owner of the personal obligation of Crenshaw, secured by a lien on the crops.—*Young v. Garber,* 149 Ala. 196. Crenshaw was in possession under a coven-

ant to be kept in quiet possession and had executed his notes for such possession and Brooks had a perfect right to sever the rent from the reversion and transfer the right to collect the rent to appellee.—Section 4752, Code of 1907; *Bennett v. McKee,* 144 Ala. 601; *Young v. Garber, supra.* It. thus appears that appellee paid value for the notes and Crenshaw discharged his personal obligation and appellee collected what belonged to it and is therefore not liable in this action. Crenshaw could not deny the right or title of Brooks, nor that of the appellee which had been acquired from his landlord Brooks.—*Stringfellow v. Curry,* 76 Ala. 394; *Crimm v. Nelms,* 78 Ala. 604; *Davis v. Williams,* 130 Ala. 530; *Crawford v. Jones,* 54 Ala. 459; *Handley v. Bank,* 16 Ala. 522; *VanCleave v. Wilson,* 73 Ala. 387; *Scott v. Rutherford,* 92 U. S. 107; 24 Cyc. 945, 949. Crenshaw under the lease, would not have been liable to Mrs. Brooks for use and occupation.—*Fielder v. Childs,* 73 Ala. 567; *Stringfellow v. Curry, supra; Grady v. Ibach,* 94 Ala. 152; *Burgess v. Amer. Mort. Co.,* 115 Ala. 470.

SIMPSON, J.—This is an action by the appellant against the appellee for money had and received, based upon the claim that the defendant had received certain bales of cotton which were paid by a renter on plaintiff's plantation for rent, and had sold the same. The facts are plaintiff owned a plantation in Lowndes county known as the "Williamson place." The records of the probate court of said county show that the lands of the estate of plaintiff's father were partitioned in 1877, a certain portion of said lands being allotted to the plaintiff (then Mary E. Williamson), and that she subsequently purchased the remaining lands of the plantation in question from Mary J. Brown. It is

shown that she had been in possession of said lands for years before the lease hereafter mentioned, and is still in possession of the same. In December, 1903, the husband of plaintiff, C. E. Brooks, leased said lands to one W. A. Crenshaw for the years 1904, 1905, and 1906, with the privilege of retaining the lands for the years 1907 and 1908, at the option of the tenant; the rent named being 37 bales of cotton, to weigh 18,500 pounds, payable on October 1st of each year. Crenshaw executed nonnegotiable notes for said rent, payable to said C. E. Brooks, and said C. E. Brooks from time to time transferred said notes to Greil Bros. Company as collateral security for his individual indebtedness to said defendant. Said Crenshaw was a man of property, owning other lands, and, as he collected these rents and others which were due him, he shipped the cotton to a warehouse in Montgomery, and when these rent notes became due he would give an order to Greil Bros. Company (the defendant) for the requisite number of bales, without specifying particularly what bales were to be delivered to them. The defendants acknowledge that the rent notes were paid to them by said Crenshaw; that they sold the same; and they furnish a statement of the amounts received, which is not controverted. The rent notes, payable to C. E. Brooks, specified that the amount of cotton agreed to be paid was "for the rent of his plantation known as the Williamson plantation, situated east of the Louisville & Nashville Railroad, in Lowndes county, Ala."

C. E. Brooks, who was merchandising in Lowndes county, had at one time done business in the name of his said wife, and had business transactions with the defendant, but at the time of making the debts, for which these rent notes were deposited as collateral, he was doing business in his own name. The plaintiff and

her said husband testified that she did not know anything about her said husband's having taken the rent notes in his own name, or about his transferring them to the defendant, until shortly before the institution of this suit; but, on the contrary, from time to time requested him to appropriate the rents to the payment of a mortgage on her said lands. So, there being no controversy as to the amounts received, the only question for decision is whether, under the facts of this case, the defendants are liable in this action. It has been settled, by the decisions of this court, that the true owner of land may, in an action for money had and received, recover rents which have been received by another, when the land is not held adversely by another.—*Price v. Pickett, et al.*, 21 Ala. 741, 743; *Young v. Garber*, 149 Ala. 196, 198, 199, 42 South. 867; 27 Cyc. pp. 865-6.

It is true, as claimed by the appellee, that, by making his note payable to C. E. Brooks, Crenshaw thereby assumed a personal obligation to said C. E. Brooks, and would be estopped thereby, in an action on the note, from denying the right of said C. E. Brooks to the payment of the note, but it nevertheless remains true that said notes were given for the rent of plaintiff's land, and so specified in the note, and when the defendant took those notes as collateral, and afterwards collected them, he was collecting the rents due for plaintiff's lands. The fact that the notes were made payable to the agent, C. E. Brooks, did not make said rent notes any the less the property of the plaintiff, and she could have maintained an action on them against Crenshaw. —*Powell v. Wade*, 109 Ala. 95, 97, 19 South. 500, 55 Am. St. Rep. 915; *McFadden & Bro. v. Henderson, et al.*, 128 Ala. 221-229, 29 South. 640. It cannot, then, in this case make any difference that it is not proved that the cotton which defendant received was raised

[Brooks v. Greil Bros. Co.]

on the plantation of plaintiff. This is not a case seeking to enforce the landlord's lien, but an action for money had and received, which ex equo et bono belonged to the plaintiff, because it was paid in satisfaction of an obligation to pay for the rent of plaintiff's lands.

Appellee next insists that Crenshaw, the tenant, by receiving a lease from the agent, C. E. Brooks, in which the land is mentioned as "his plantation" (that is, C. E. Brook's), was therefore holding adversely to the plaintiff, and therefore comes within the exception in the cases on the subject of the landlord's recovering for rents collected. If that were true, every tenant who does not rent directly from the landlord could say that he is holding adversely. The true principle is that, if the party who undertakes to lease the land to the tenant is holding adversely to the true owner, said owner cannot recover in this action because it would involve a decision as to the title to the land.—*Young, et al. v. Garber,* 149 Ala. 198, 42 South. 867; *Price v. Pickett, supra.* C. E. Brooks never claimed any interest in the land, but acted solely as the agent of his wife. Consequently no question of adverse holding occurs in this case.

It is true, as contended by the appellee, that, when the principal sues on a contract made by the agent, he thereby ratifies the contract, but that does not carry with it a ratification of what the agent may afterward do with the contract, or its proceeds, in violation of his duty as agent. The principal in this case ratifies the contract of leasing, and claims only what the tenant agreed to pay as rent. This court has held that where the wife's lands were sold, and she allowed the note for purchase money to be made payable in the alternative to herself or her husband, she was not estopped to assert her title to, and ownership of, the note

as against her husband's creditor (*Corry, Adm'r, v. Jones, et al.*, 114 Ala. 502, 21 South. 815), also that where an agent made a contract granting mining privileges on the wife's lands, without disclosing his principal, the principal could sue on the contract.—*Brooks, et al. v. Cook, et al.*, 141 Ala. 499, 504, 38 South. 641.

Before the principal can be held to have ratified the acts of the agent, acting beyond his authority, it must be shown that the person ratifying had full knowledge of all the facts and circumstances, and of the acts of the agent, previous to ratification.—*Brown v. Bamberger, Bloom & Co.*, 110 Ala. 344, 354, 355, 20 South. 114; 31 Cyc. pp. 1253-1256. The principal has the right to presume that the agent will act only within the sphere of his authority, and, in the absence of circumstances sufficient to put one of reasonable prudence on inquiry, is not held to any diligence to ascertain the fact that the agent is acting beyond his powers.—31 Cyc. p. 1256; *Nourse v. Jennings*, 180 Mass. 592, 62 N. E. 974.

The cases in which the principal has been held to responsibility for the acts of the agent, so as to render the proceeds of sale subject to offsets against the agent, are those in which the principal has intrusted the possession of personal property, with all the indicia of ownership, to the agent, and the distinction is clearly drawn between the case of a factor who is intrusted with the possession and control of the goods, and a broker who is not so intrusted; the right of set-off against the agent obtaining in the former but not in the latter.—*Bernshouse v. Abbott*, 45 N. J. Law, 531, 46 Am. Rep. 789, 790. Of the former class is the case of *First National Bank v. Nelson*, 106 Ala. 535, 18 South. 154, referred to in appellee's brief. In that case the wife indorsed the notes and placed them in the hands of her husband, thus arming him with the indicia

of ownership and authority to transfer them as his own.

In the case of *Tobias v. Josiah Morris & Co.*, 126 Ala. 550, 28 South. 521, the wife was present in the bank when the husband deposited the money, reserving the privilege to check it out himself, and the court held that it was a question for the jury to decide whether the wife was estopped, saying: "Although she may not have heard what was said, and did not see the signature given, yet, if by her acts and conduct on the occasion, she led the bank to believe that she had intrusted the entire matter to Jones and her husband, or to her husband, to make the contract of deposit, and how the account was to be kept, and how drawn out, and it acted upon it, she must suffer for her own neglect rather than the bank." The case of *Gardner & Sager v. Allen's Executor*, 6 Ala. 187, 41 Am. Dec. 45, involved the purchase of goods from a factor, and the court italicizes the allowance of the set-off *"if he purchased under a just belief, authorized by the facts of the case,* that the agent was the real owner of the goods." In other words, the owner had clothed the factor with the indicia of ownership.

There is not any evidence in this case tending to show that the wife held out her husband to the public as her agent, with authority to make rents payable to him and to use the proceeds for his own individual purposes. There is no principle of estoppel or ratification, as the evidence is uncontroverted that she knew nothing of the notes being made payable to him, or of his transferring them until shortly before the institution of this suit, also that her instructions to him were to use the money in paying off the mortgage on her place, and she supposed he was doing so. On the other hand, the notes state that they are for the rent of the Williamson place, and the records of the county showed to whom it belonged.

The record does not furnish any evidence of any act by the wife to mislead the defendant in regard to the matter. Appellee insists that this was a purchase of the cotton from the husband, and that defendant was an innocent purchaser without notice of any lien. In the first place, it is not a question of lien, but of ownership, and in the next place it was not a purchase of property at all, but a collection of notes given for the rent of plaintiff's lands, which, under all of the authorities, makes the defendant liable to the plaintiff. The notes were payable in cotton, and the cotton collected and sold, and in such case the action is for money had and received.—*Burton Lumber Co. v. Wilder,* 108 Ala. 669, 18 South. 552.

One of the defendants testified that his firm had collected the cotton on said rent notes, had sold the same, and realized thereon $1,687.42 on October 31, 1904, $1-854.62 on October 25, 1905, $1,983.31 on October 11, 1906, $2,050.14 on December 11, 1907, and $1,695.40 on January 22, 1907.

The judgment of the court, sitting without a jury, is reversed, and the cause is remanded.

Reversed and remanded.

DOWDELL, C. J., and MCCLELLAN and SAYRE, JJ., concur. ANDERSON, MAYFIELD, and SOMERVILLE, JJ., dissent.

MAYFIELD, J.—I cannot concur in the conclusion in this case because I believe it to be wrong under both the law and the facts involved. This is an equitable action for money had and received, and I do not believe that the defendants are liable to the plaintiff under the plaintiff's own evidence, much less under that of the defendants. Under plaintiff's evidence her hus-

band was her general agent and managed and controlled all her business of every kind. His will was her will as to all matters of business. She is not shown to have ever objected, during a period of more than 10 years, to anything he did in this matter, as to substance or form. Though acting as her agent, he made all the contracts in his name, and not in her name, and she is not shown to have ever called him to account in any of all these business matters extending over a period of many years. He in this manner rented her farms for a term of several years, made and executed the contracts in his own name, and took notes for the rents, payable to himself, and put these notes in circulation by indorsing them to defendants. There was a series of these notes extending over several years, covering the entire period of the lease, one of which was payable each year. Several of the notes matured, and were paid by the maker to the defendants as the legal and equitable holders and owners of the same; the husband thus receiving the full value therefor. This continued for several years, without any complaint on the part of the wife, who was the principal until the husband had received full value for all the notes; then he becomes insolvent, and the wife, for the first time, inquires or ascertains what he has done as to her rents, and then, instead of holding her husband to account, or of holding the tenant to account, she sues the defendants who had paid value for the notes, and to whom the tenants had paid the notes as they had agreed. If she is not estopped from now saying that she had no notice of the true facts in the case, what would be required to estop her? It is very true that a party is not estopped by facts of which he has no knowledge or notice; but he is estopped, in a case like this, from saying he had no notice or knowledge of such facts.

[Brooks v. Greil Bros. Co.]

In truth, in fact, and in law, she did have knowledge of the facts, and the law will not now hear her say that she did not know of these facts. Otherwise both she and her husband would be aided by the law and the courts to perpetrate an unwarranted fraud in law, if not in fact, not only upon these defendants, but upon the entire public with whom they chanced to deal; that is, they would both one as principal and the other as agent, collect full value for the rent of her lands, not for one month nor for year, but for 10, 20, or 100 years. They could thus bankrupt or ruin the tenant and the merchants who supplied her and her husband.

If these defendants are liable to the wife, certainly the tenant is also liable to her, and liable to these defendants also. There is no possible escape for him; he is caught between the upper and lower millstones and ground to death in being thus compelled to pay all those with whom he contracted, and then required to pay those with whom he did not contract. If the wife did not know that her husband had rented this land in his own name, had taken the notes in his own name, and had collected the rents for these many years, it was only because she did not want to know or did not care. If she had desired to know the true facts, she could and would have easily ascertained them, and thus saved every one from loss. The husband could not have concealed them from her, even had he tried; if she had asked the tenant, he could have informed her fully. It is really difficult to see how it was possible, if she had cared a cent about the matter, that she could live with her husband all those years without knowing what was going on; she certainly knew that neither the husband nor the tenant had paid any rent for all those years, and she could have easily ascertained, by inquiry of

Mr. Flowers, that it had not been paid on the mortgage, as she says she instructed her husband to apply it.

Conceding that the plaintiff has acted in the utmost good faith in this matter, that her loss was due solely to the great confidence and trust which she reposed in her husband—a most worthy attribute of character in a good wife—yet to allow her to recover in this suit would be no less a fraud in law than if she had deliberately colluded with her husband to thus make these defendants and this tenant pay the rent of this place to both her husband and herself. Estoppels worked by negligence or silence are just as effective and righteous as if worked by misrepresentation or other active fraud. She who is silent when she ought to speak will not be allowed to speak when she ought to keep silent. When one of two innocent parties must suffer a loss on account of the wrong of a third party, she who allowed the third party to commit the wrong must suffer it.

The above maxims are ancient and just, and are, in my opinion, applicable to the facts in this case, and conclusively support the judgment of the trial court in finding for these defendants. How it could be possible for this bi-unity of husband and wife to so manipulate the renting of the wife's farm as for each to be able to separately collect the full rental value of the farm for eight or ten years, without committing a fraud upon the rights of these defendants and those of the tenant, I am wholly unable to understand; yet this is what they have done, if the majority opinion is correct and is enforced. If it can be done, it is certainly an art or a science that all married landlords and landladies should learn. It is worth knowing. The boll weevil should have no terrors for those who understand it.

ON REHEARING.

ANDERSON, J.—I think that the judgment of the trial court should be affirmed for the following reasons, if not upon several other grounds not necessary to discuss: The plaintiff admitted that her husband had the entire management and control of the plantation, with full authority to collect the rent cotton, and to sell the same, and to use the money to pay off an existing mortgage on the said plantation. It will thus be noted that she armed her agent with full authority to rent the place and collect the rents, and to dispose of said rents for a limited or specific purpose. Therefore, if her said agent misappropriated said rent, he merely exceeded his authority, as he had the indicia of authority or ownership; and, if the said rents fell into the hands of an innocent purchaser, the wife who armed him with said indicia of authority should suffer. It is true the defendants may have known that the cotton came off of the wife's lands, but they had every reason to believe that the plaintiff had given her husband the authority to do what he did, or was ratifying his act each year; and, unless these defendants knew that the said husband was breaching the trust reposed in him by using the rent instead of paying off the mortgage on the land, they would not be liable in this action.—*First Nat. Bank v. Nelson,* 106 Ala. 535, 18 South. 154. These transactions had been going on for eight years, and the plaintiff knew, or ought to have known, that the husband was using the rent and was not paying off the mortgage debt, as she claims to have instructed him to do, yet no word was said or protest made against his using the rent until after he had become a bankrupt for the second time. The trial court could well infer that the plaintiff knew, for years and years, that her

[Brooks v. Greil Bros. Co.]

agent was disposing of the rent and was not paying off the mortgage on the land, and that she did not first learn of this until just before the suit was brought. The plaintiff repeatedly renewed and extended the mortgage indebtedness during the period covered by these transactions, and each time that she gave a new mortgage on the land she knew that the rent had not been used to pay off or reduce the mortgage debt, and was put upon notice that her said agent was disposing of the rent for other purposes. After permitting him to do this for years and years, she is now estopped from claiming that a fraud and deception had been practiced upon her by her said husband, and cannot recover the rent from these defendants who have not been shown to be participants in the fraud claimed to have been practiced by the husband upon his wife, this plaintiff.

This case was tried without a jury, and the evidence was ore tenus, and we cannot say that the conclusion of the trial court was wrong. Justice SOMERVILLE concurs in this opinion and conclusion. Justice MAYFIELD also thinks the case should be affirmed, for the reason set out in his dissenting opinion.

The result is the granting of the rehearing, the vacation of the judgment of reversal, and the affirmance of the case.

Affirmed.

ANDERSON, MAYFIELD, SOMERVILLE, and DE GRAFFEN-RIED, JJ., concur. DOWDELL, C. J., and SIMPSON and SAYRE, JJ., dissent. MCCLELLAN, J., not sitting.