150 So. 557

# UNIVERSITY CHEVROLET CO. v. BANK OF MOUNDVILLE.

## 6 Div. 431.

Court of Appeals of Alabama.
May 9, 1933.

Rehearing Denied June 30, 1933.

R. C. Price, of Tuscaloosa, for appellant.

H. A. & D. K. Jones, of Tuscaloosa, for appellee.

SAMFORD, Judge.

The plaintiff, Bank of Moundville, filed a suit in assumpsit against the defendant, University Chevrolet Company, Inc., as the transferee of a note for $400, payable to University Chevrolet Company, Inc., alleged to have been indorsed to the plaintiff. Suit is against University Chevrolet Company as indorser of said note and on the common counts, containing twelve counts. The defendant filed a sworn plea denying the execution of the transfer of said note to the plaintiff, as shown on page 8 of the transcript, and plea of general issue. Issue was joined on these pleas and plaintiff filed a replication alleging that if the indorsement on the note was not authorized by the principal of the purported agent of the defendant, then there was a ratification of the indorsement by accepting the proceeds. The defendant filed a general denial of the replication, joining issue on the same, the case was tried by a jury, and the verdict for the plaintiff for $498 was returned. There was a motion filed for a new trial and the motion was overruled.

The University Chevrolet Company, Inc., defendant below, appellant in this case, was engaged in selling automobiles, and located in the city of Tuscaloosa, Ala., on and prior to November 5, 1930, and employed a large number of automobile salesmen and other employees. The Bank of Moundville, plaintiff in the lower court, appellee here, was engaged in the banking business in Moundville, Ala., on and prior to November 5, 1929. One H. T. Regan was employed by the University Chevrolet Company, Inc., appellant, as an automobile salesman, and just prior to the 5th day of November, 1929, was negotiating with one J. C. Stokes of Moundville, Ala., for the sale of an automobile. The salesman was authorized by the University Chevrolet Company, Inc., to sell an automobile to J. C. Stokes for the sum of $762 on a time purchase, and to allow a trade in for his old car, or a cash price of $662, together with his old car. The salesman carried a new car out to J. C. Stokes and returned with a cashier's check for $662; the cashier's check being on the Bank of Moundville, payable to the University Chevrolet Company, Inc., dated November 5, 1929. It appears that J. C. Stokes executed a note and sales contract for $400 of the purchase price, payable to University Chevrolet Company, Inc., payable November 5, 1930. It further appears that H. T. Regan, who was a salesman for University Chevrolet Company, Inc., and who was unauthorized to indorse any notes or securities, or transfer the same for University Chevrolet Company, Inc., took the $400 note of J. C. Stokes to the Bank of Moundville and told Mr. Griffin, the cashier, that there was $50 in it for him if he would discount the note, and after Mr. Griffin agreed to discount the note, he indorsed on the back of said note the following: "University Chevrolet Motor Company, Inc., by H. T. Regan," and the cashier of the bank, Mr. Lee M. Griffin, issued for the note and either cash or a check amounting to $350 from J. C. Stokes, a cashier's check for $662, payable to University Chevrolet Company, Inc.; said cashier's check being on the Bank of Moundville, dated November 5, 1930. H. T. Regan carried the $662 cashier's check, and the old Stokes car, and turned them in to the appellant's bookkeeper as a cash sale on the new automobile he had carried out. No one had authorized him to indorse the J. C. Stokes note to the bank, and neither the University Chevrolet Company, Inc., nor its officers, were ever notified of the transaction until after November 5, 1930, more than one year later, which was

after the maturity of the J. C. Stokes note for $400. After the maturity of the note, the cashier of the bank wrote a letter to J. C. Stokes demanding payment, and sent a copy of the letter to the appellant.

When the $662 cashier's check was received in the office of the appellant, the same was credited as cash, for a cash sale of an automobile, and was indorsed with the rubber stamp as follows: "Pay to the order of the First National Bank of Tuscaloosa, University Chevrolet Company, Inc."

When the cashier's check was introduced in evidence in this case, it appeared in type just above the indorsement the following words: "Accepted for full settlement of note and mortgage and cash payment of J. C. Stokes on Chevrolet Coach. The note and mortgage bearing the endorsement of the University Chevrolet Company, Inc., by H. T. Regan, with full recourse on the University Chevrolet Company, Inc." The cashier who stamped the indorsement on the check testified that if the last-quoted notation was on the back of the cashier's check, that she did not see it and had no notice of it. Mr. Pete J. Davis, the manager of the University Chevrolet Company, Inc., and the only person of said company with authority to transfer notes and securities by indorsement, testified that he gave no authority to transfer any note, and says that he never had any knowledge of the above-quoted notation on the check, or that a note was indorsed by Regan, and was informed and believed the sale to J. C. Stokes was a cash sale. Mr. Griffin says that the foregoing notation was placed on the back of the cashier's check before he delivered it to H. T. Regan.

Mrs. Lucille Lavender testified that she did not see any notation on the back of the cashier's check, and that in her best judgment it was not there at the time she stamped appellant's indorsement on it. Mr. Pete J. Davis, the president and manager of the University Chevrolet Company, Inc., and the sales manager, Mr. H. Coleman, say that H. T. Regan had no authority to transfer any note to the Bank of Moundville or any other person, and that they had no knowledge of the transfer alleged by plaintiff to have been made, and that the sale by Regan to Stokes was turned in and represented to them as a cash sale. It further appears that the Bank of Moundville took a mortgage on the automobile sold to Stokes, and other property, for $525, on the 8th day of March, 1930, which secured the $400 note of J. C. Stokes and a $125 advancement. It further appears that on the 2nd day of February, 1931, Stokes mortgaged the same automobile, and other property, to the Bank of Moundville for $470, which was to secure the $400 note of J. C. Stokes and some advancement for the year 1931. It further appears that soon after the sale of the car by H. T. Regan to J. C. Stokes,

H. T. Regan left the University Chevrolet Company's employment. It further appears that the University Chevrolet Company did not know of any liability, if any existed, on the note of J. C. Stokes as indorser on said note, and that no insurance on the automobile was ever procured, which is customary on cars sold on time to have insurance covering. It then appears that J. C. Stokes never paid his $400 note to the Bank of Moundville, and the Bank of Moundville is now suing this appellant.

There are several questions presented by this record, but as we see it it becomes unnecessary to pass upon any of them except the refusal of the trial court to give at the request of defendant the general affirmative charge.

The plaintiff's sole right to recovery depends upon an alleged indorsement by the University Chevrolet Company on the note of Stokes payable to defendant's company and indorsed by H. T. Regan, who was a salesman for defendant and who made the sale to Stokes. The evidence is without dispute that Regan was without authority to transfer the note to plaintiff and having been transferred and indorsed by Regan, without authority, this defendant is not bound unless, with a full knowledge of the entire transaction, it ratified the transfer.

The plaintiff in purchasing from Regan, the salesman, the note and mortgage, is bound to have known that Regan was assuming to transfer property of the corporation, and it was also bound to know whether or not Regan, who assumed to represent defendant and to act in its name, was authorized to do so, and the nature and extent of such authority. The foregoing is sustained by the text as written in 14a Corpus Juris, 351 (2213) (4), and by a long and unbroken line of decisions cited in notes 57 and 58.

In order for this defendant to be bound by the unauthorized act of Regan in indorsing and transferring the Stokes' paper to the bank, it is essential that this defendant should have had full knowledge of the facts at the time the ratification is claimed. Brown v. Bamberger, Bloom & Co., 110 Ala. 344, 20 So. 114; 2 Corpus Juris 476 (93) 5; Brooks v. Greil Bros., 179 Ala. 459, 60 So. 387. The principal has a right to presume that his agent will act only within the sphere of his authority, and in the absence of circumstances sufficient to put one of reasonable prudence on inquiry, is not held to any diligence to ascertain the fact that the agent is acting beyond his authority. Nourse v. Jennings, 180 Mass. 592, 62 N. E. 974; Brooks v. Greil Bros., supra.

Pete J. Davis was the president and general manager of defendant's company and according to the undisputed evidence was the

only person having authority to have made the transfer and indorsement of the paper sued on to the plaintiff. Griffin, the president of the bank, testified that when he called Davis about the matter more than a year after the transfer, Davis denied knowing anything about any transfer or indorsement and declined to be bound by it. Griffin testifies that the indorsement for full recourse on defendant was written on the plaintiff's cashier's check at the time it was given to Regan. Defendant's bookkeeper, sales manager, and cashier, through whose hands the cashier's check passed, all testify that when they saw it there was no such indorsement on the check, and the evidence is without dispute that Davis, who was the only person authorized to bind defendant on the indorsement of the Stokes' paper, never saw or was informed of any indorsement on the cashier's check. It may be noted in this connection that the cashier's check was deposited for collection in the Tuscaloosa Bank, from whence it was sent to the Moundville Bank for payment, where it has rested ever since, until the trial of this case. The question therefore as to whether the indorsement was actually on the cashier's check at the time it came to defendant's company was one of fact to be decided by the jury, if that decision became necessary. Being a crucial point on the question of notice, we hold that the great weight of the evidence tends to prove that at the time plaintiff's cashier's check was delivered to defendant the memorandum now appearing on the check did not exist. On this ground the defendant would be entitled to a new trial.

■ There is, however, another proposition which is conclusive of this appeal. No notice or knowledge having come to Davis regarding the transfer of the Stokes' note and mortgage to plaintiff, the defendant corporation cannot be chargeable with such knowledge as would bind it in the premises. 14a Corpus Juris, 375; Edwards v. Carson Water Co., 21 Nev. 469, 34 P. 381; Yellow Jacket Silver M. Co. v. Stevenson, 5 Nev. 224; Wickersham Banking Co. v. Nicholas, 2 Cal. App. 18, 82 P. 1124; Bi-Spool S. M. Co. v. Acme Mfg. Co., 153 Mass. 404, 26 N. E. 991.

■ In order for the defendant corporation to have had notice of the unauthorized act of Regan in indorsing the Stokes' paper to the plaintiff bank, in such sort as to bind this defendant by the indorsement the notice must have come to some officer of defendant corporation with power to bind the defendant. According to the evidence in this record Davis was the only officer having this power, and it further appearing without dispute that Davis had no such notice, the defendant cannot be held on the indorsement. The acceptance of the consideration of an unauthorized contract, without knowledge of the terms of the contract, or of the transaction upon which it is predicated, is not itself a ratification of the contract. So says Anderson, C. J., in Alabama Fid. & Cas. Co. v. Jefferson County Savings Bank, 198 Ala. 557, 73 So. 918. See, also, Singer Mfg. Co. v. Belgart, 84 Ala. 519, 4 So. 400; 14a Corpus Juris 376 (2234).

If with full knowledge of the unauthorized act of Regan in indorsing the Stokes' note to plaintiff, defendant had accepted and retained the proceeds, defendant would have been bound as for a ratification of the act, but not where it had no knowledge of the unauthorized transaction at the time of such acceptance. Webber v. Williams College, 23 Pick. (Mass.) 302; Singer Sewing Mach. Co. v. Barger, 92 Neb. 539, 138 N. W. 741, Ann. Cas. 1917A, 57; Sloan v. Gilmore (Tex. Civ. App.) 167 S. W. 1089; Gaskill v. Huffaker (Ky.) 49 S. W. 770.

There is no evidence in this record tending to prove notice to Davis or other officer of defendant with authority to bind defendant in the premises, until more than twelve months after the transaction. In the meantime plaintiff had dealt with Stokes, making two additional loans to him and each time taking a mortgage which included the $400 note, the subject of this indorsement, and as security the automobile sold by defendant to Stokes was included in the mortgages to plaintiff, along with other property which included all of the personal property owned by Stokes.

The rulings of the trial judge were not in accord with the foregoing opinion, and for the reasons therein stated the judgment is reversed and the cause is remanded.

Reversed and remanded.