A. L. RHOMBERG, Appellant, v. EDWARD AVENARIUS, Ap-pellee.

**Evidence:** VARIANCE OF WRITING. To show simply that the payee
1　named in a note is not the real owner does not amount to an attempt to contradict or vary the terms of the instrument.

**Rebuttal evidence:** IMPEACHMENT. Evidence in rebuttal which is
2　competent for the purpose of impeaching a defendant should not be excluded because tending to support the plaintiff's main case.

**Collateral security:** COMPROMISE AND SETTLEMENT: LIABILITY OF
3　PLEDGEE. One holding a chose in action as collateral security cannot compromise and discharge the same except upon full payment, unless he has express authority from the owner so to do; and having compromised the claim without authority, he cannot absolve himself from liability for the remainder by

showing that the settlement was not his own but that of another to whom it was intrusted.

*Appeal from Dubuque District Court.*— HON. FRED O'DONNELL, Judge.

TUESDAY, JULY 2, 1907.

ACTION at law on two promissory notes. In addition to pleading defensive matter, the defendant interposed a counterclaim. The trial was to a jury, and resulted in a verdict and judgment in favor of defendant. Plaintiff appeals.— *Reversed* and *remanded* for new trial.

*William Graham* and *P. J. Nelson,* for appellant.

*T. J. Fitzpatrick,* for appellee.

BISHOP, J.— Each of the notes in suit was executed by defendant as maker. One is for $225.25, payable to the order of Walker & Rhomberg, and indorsed after due to plaintiff. The other is for $15, payable to the order of R. M. Kunz, and indorsed after due to plaintiff. Defendant admits the execution of the notes, but as to the $15 note, insists that, while made payable to Kunz, it was in fact given for money loaned by Walker & Rhomberg, and that it was delivered to and became the property of that firm. In the counterclaim, defendant declared upon two notes executed to him by the firm of Walker & Rhomberg; one for $500 on which $475 — money derived from payment on a collateral note as hereinafter referred to — had been paid; the other for $200. The junior member of the firm of Walker & Rhomberg is not plaintiff, but one D. Rhomberg; and the theory of the counterclaim, as will readily be understood, is that, as plaintiff took the notes held by him when dishonored, the notes of said firm are proper matters of set-off. In reply plaintiff alleged that at the time of the giving of the $500 note declared upon in the counterclaim

Walker & Rhomberg delivered to defendant as and for collateral security a note and mortgage for $500, executed by one Scanlan; further, that defendant had accepted in full payment and satisfaction of the Scanlan indebtedness the sum of $475, and had canceled and surrendered up the said collateral note and mortgage. And the allegation follows that thereby the Walker & Rhomberg note had become fully paid and extinguished.

I.   Over objection by plaintiff, defendant was allowed to testify that on the occasion of the execution of the $15 note he had gone to the office of Walker & Rhomberg and requested a loan of that amount; that D. Rhomberg drew up a note in favor of Kunz, and requested its execution, to which defendant at first objected, but, on being assured that Kunz was a member of the firm, and that the money to be loaned was the firm money, he consented to sign. Plaintiff insists that such evidence should have been excluded because an attempt to contradict or vary terms of a written instrument. We think there was no error. Defendant was making no attack upon the note. He was seeking to show simply that, while Kunz was named as payee in the note, it was in fact the property of the firm of Walker & Rhomberg.

1. Evidence: variance of writing.

II.   It was developed in the course of the trial that the Scanlan note and mortgage had been placed in the hands of Hubert O'Donnell, an attorney, for collection, and that he had accepted from Scanlan the sum of $475 in full payment and satisfaction of such note and mortgage. It thus became material to inquire for whom O'Donnell was acting in the premises. In making out his defense to the counterclaim, plaintiff called D. Rhomberg as a witness, and he testified that the firm of Walker & Rhomberg had no connection with the employment of O'Donnell. Plaintiff then called O'Donnell to the stand, and he testified that his employment was by defendant; that the acceptance by him of $475 in full pay-

2. Rebuttal evidence: impeachment.

ment and satisfaction of the collateral note was with the knowledge and on the advice of defendant. Being called in rebuttal, defendant denied having any connection with the employment of O'Donnell, or with his conduct in the premises. On cross-examination he was interrogated specifically in respect of certain conversations had by him with O'Donnell on the subject, the time and place being fixed, and he denied the occurrence of any such. O'Donnell was then recalled by the plaintiff, and interrogated in proper form as to such conversations. To this the defendant objected as not proper in rebuttal, and the objection was sustained. We think the witness should have been allowed to answer. As we understand it, the evidence was not offered in rebuttal, but for the purpose of impeachment. Plaintiff was not seeking to bring out any new or additional facts to bolster up his claim that the employment of O'Donnell was by defendant, but to show that at other times and places defendant had made statements on that subject at variance with his testimony as now given. The propriety of this is not open to doubt; and it is not material that plaintiff might have brought out the evidence afforded by such conversations on his main cases as far as they tended to proof of the employment of O'Donnell by defendant. This could not take away his right to make use of the evidence to discredit or impeach the testimony of the defendant. *Ankersmit v. Tuch,* 114 N. Y. 51 (20 N. E. 819).

III. As indicated in the foregoing division of this opinion, the payment by Scanlan was made to the attorney, O'Donnell, and the question of the employment of such attorney was in dispute; each party contending that he was employed by the other. Now, as bearing upon the subject, the court told the jury in the eleventh instruction, that, even though O'Donnell was the attorney of defendant, still if defendant did not authorize him to accept less than the amount due on the collateral note, and did not know when

3. COLLATERAL SE-
CURITY: compromise and
settlement: liability of pledgee.

the proceeds of the collection were paid to him that settlement had been made for less than the amount due, " then the receipt of the money under such circumstances would not be a ratification of the act of the attorney." And, again, in the thirteenth instruction the court said: " If you believe that the attorney, O'Donnell, proceeded on his own account to settle for the Scanlan note and mortgage for less than the amount due thereon, without the knowledge or assent of defendant, and defendant received the proceeds thereof without knowing a setlement had been made for less than the amount due, then in such case the defendant would not be liable for conversion of the security, even if he had employed or requested O'Donnell to foreclose the mortgage or collect the amount due."

Appellant complains of these instructions; and that they involve error is manifest to our minds. It is the rule of all the books that one holding a chose in action as collateral security has no authority to satisfy and discharge the same except on full payment of the collateral. He may not compromise or release on payment of part. Colebrook on Coll., section 96; Story on Bailment, section 321; 22 Am. & Eng. Ency., 903, and cases cited in note. And what one cannot do by himself he cannot do by an agent or attorney. It is cardinal doctrine in the law of agency that, as between the principal and third persons, the former is responsible for all tortious acts done by his agent in the course of his employment, and this " although the principal did not authorize or justify or participate in, or indeed know of, such misconduct, or even if he forbade the acts or disapproved of them." 1 Am. & Eng. Ency., 1152. If, then, O'Donnell was acting as the attorney for defendant, and so acting he canceled and surrendered to Scanlon the collateral note and mortgage without payment of the full sum due thereon, this in law operated as a conversion to the extent of the value of the collateral note in excess of the amount paid to secure its surrender. And it was a conversion by

defendant.   Quite different might be the case if the question respecting the authority of O'Donnell had arisen between defendant and Scanlan.   Many cases can be found — and counsel for appellee cite some of them — holding that a principal is not bound in favor of a third person with whom his agent has acted, unless the acts done were within the scope of the authority of such agent, or there has been a subsequent ratification.   But counsel is in error, as manifestly was the court below, in supposing that this rule has any application to the case at bar.   We are dealing here with the question whether a pledgee who has accounted for only a part of the property received by him, can absolve himself in respect of the remainder by pleading that the loss or destruction did not occur by his own hand, but by the hand of another whom he had selected and appointed to deal with the property.   And as to this we say that the voice of authority and the dictate of reason forbid the absolution.

In view of a retrial of the case, other errors argued need not be discussed, as they are not likely to again arise.

For the errors pointed out, the judgment must be reversed, and the case remanded for a new trial.— *Reversed.*