State of Iowa, Appellee, v. Laura Hunter, Appellant.

**DISORDERLY HOUSES:** Evidence—Reputation of House—Non-Ap-
1   plicability of Statute.   Under a charge of keeping a "disorderly
    house" in violation of a city ordinance, evidence of the reputation
    of the house is not admissible.   Sec. 4944, Code, 1897, authorizing
    such evidence under a charge of keeping a house of ill fame, is not
    applicable in such a case.

**WITNESSES:** Impeachment—Contradictory Statements—Rebuttal.
2   Evidence in rebuttal which is competent as impeaching testimony
    should not be excluded because tending to support plaintiff's main
    case.

*Appeal from Linn District Court.*—Milo P. Smith, Judge.

Friday, January 21, 1916.

This is a criminal prosecution under an ordinance of the
city of Cedar Rapids, charging defendant with keeping a dis-
orderly house.   The information alleged that defendant did,
on or about May 16, 1914, at the city of Cedar Rapids, keep
a disorderly house at 545 Second Avenue in said city, said
house being under the control of defendant, and did permit
or allow therein persons not married to each other to resort
thereto for an immoral purpose, contrary to the form of the
ordinance of said city in such cases made and provided.   The
defendant was convicted in the police court of the offense
charged, and appealed to the district court.   Upon trial to a
jury in that court, defendant was again found guilty and sen-
tenced to pay a fine of one hundred dollars and costs.   From
such judgment, defendant appeals.—*Reversed.*

*Voris & Haas,* for appellant.

*F. F. Dawley* and *C. L. Luburger,* for appellee.

Preston, J.—1.  The ordinance is as follows:

"Sec. 282.   Disorderly Houses—Keeping.   14.   If any

person within the corporate limits of this city, knowingly permits or allows in any house, apartment, hotel or building owned by him or under his control, any lewd and boisterous conduct between male and female persons who are there present as guests or patrons, or if any person knowingly permits or allows in any house, apartment, hotel or building owned by him or under his control, any person to resort thereto for an immoral purpose with another person to whom he or she is not married, he shall be deemed guilty of keeping a disorderly house.''

1. DISORDERLY HOUSES: evidence: reputation of house: non-applicability of statute.

As counsel for appellant state the facts, there is no case against the defendant; but this is from her standpoint. The sufficiency of the evidence is challenged; but, if the jurors believed the State's witnesses, as they had a right to do, they could have believed from the evidence that defendant was guilty of keeping a disorderly house.

In view of a new trial, perhaps it would be better that we should not discuss the evidence too much. And, because the case is reversed on the ground that the trial court admitted evidence of the reputation of the place, it will not be necessary to set out the evidence which we think sustains our holding that the case was one for the jury. As bearing upon the question as to whether evidence of the reputation of the place was admissible, we should briefly refer to the evidence to show that the evidence admitted tends to support the charge made in the information that defendant was keeping a disorderly house, under the first part of the ordinance. It is doubtless true that such evidence would be admissible if the charge was keeping a house of ill fame. If it is thought that the latter part of the ordinance does define a house of ill fame, then the evidence does not show that persons permitted to resort thereto were not married. There is evidence that at one time, 15 or 16 men went to the defendant's house within a space of two hours, but none of them were admitted. At another time, two automobiles drove up and stopped near her

house and four men got out and went into the house; and when the police came, these parties were about to depart. Another witness living near testifies as to loud talking at defendant's place, and testifies further that a large number of people resorted to defendant's house who did not seem to room there. A neighbor testifies that he had seen men go to the defendant's house who were not roomers, and that men would come to his house and inquire for the defendant's place. Persons were seen sitting in front of defendant's house in the nighttime, drinking beer out of bottles. Several witnesses, when called by the State, testified that they knew the reputation of defendant's house, and its reputation was described variously as being a house where men and women gathered for immoral purposes; that it bore a bad reputation; that its reputation was that of a disorderly house.

By assignments 2 and 3, it is claimed by appellant that the court erred in admitting testimony of different witnesses concerning the reputation of the house. One contention of the appellant at this point is that the crime defined by the ordinance and charged in the information is a single, specific act, and that it was necessary, therefore, that some specific act of immoral conduct be shown, either by direct or circumstantial evidence, and that the reputation of the house was not involved. But we think the gist of the offense charged is the keeping of a disorderly house. It has been held that one act of gambling will complete the offense, under a statutory provision prohibiting a person from keeping a house resorted to for the purpose of gambling, and that it is as complete if the house is kept for one day as if kept for a year. *State v. Crogan*, 8 Iowa 523; *State v. Cooster*, 10 Iowa 453. Proof of one sale of intoxicating liquor in a building is sufficient to constitute a nuisance, that is, in keeping or maintaining a place where liquor is sold or kept for sale contrary to law. *State v. Reyelts*, 74 Iowa 499.

Under other provisions of the statute, which provide that, if a person be found at a hotel, boarding house or other place,

leading a life of prostitution or lewdness, he shall be punished, etc., one act would not be sufficient to constitute leading a life of prostitution, etc. But that question is not in this case. Under our statute, a house where drunkenness, quarreling, fighting or breaches of the peace are carried on or permitted, to the disturbance of others, is declared to be a nuisance. Under such a statute, it has been held that one may be convicted on proof that he kept the place and that such acts were carried on there with his permission on a single occasion. *State v. Pierce,* 65 Iowa 85.

There are cases, however, holding that, to constitute a disorderly house, there must be a habitual violation of the law. 14 Cyc. 483.

Proof of the reputation of houses of ill fame has been made competent evidence by statute. Code Sec. 4944. This reads:

"The state, upon the trial of any person indicted for keeping a house of ill fame, may, for the purpose of establishing the character of the house kept by defendant, introduce evidence of the general reputation of such house as so kept."

It is the contention of appellant, as we understand it, that this section limits the proof of the reputation of the house to those cases alone which are prosecuted by the state under indictment; while appellee contends that the state has granted to cities the power to prohibit disorderly houses, houses of ill fame, etc. Code Sec. 704. And they say that the authority granted the cities to prohibit such houses is concurrent with that of the state and that, such power having been granted to the city by the state, it follows that the statutory rule of evidence accompanies the authority granted to the city; in other words, that when the state made such evidence competent in trials commenced by the state under indictment, it made the same evidence competent in trials prosecuted by the city; that if such were not true, then the

power granted to the city to prohibit these houses by ordinance is an empty right, incapable of being effectively exercised; that, in a prosecution by the state, evidence of reputation would be admissible; but, if appellant's contention is correct, the prosecution for the same thing under a city ordinance would prevent the use of such evidence. This might be true if the prosecution was for keeping a house of ill fame under an ordinance; but this we do not now determine, because we think the question is not in this case. It will be observed that the first part of the ordinance before quoted defines a disorderly house. There is some doubt whether, even under the latter part of the ordinance, a person could be prosecuted for keeping a house of ill fame. But this we do not determine; because, as before stated, the evidence introduced has reference more particularly to a disorderly house. The evidence as to the reputation of defendant's place which has been set out was to the effect that the place kept by defendant was a disorderly house, not that it was a house of ill fame. The information alleges that defendant did keep a disorderly house, and the charging part of the information states that defendant did permit or allow therein persons not married to each other to resort thereto for an immoral purpose. This has reference to the latter part of the ordinance, but we have already said that there was no evidence that the persons permitted in the place were unmarried. The pleader, in drawing the information, seems not to have distinguished between the two parts of the ordinance. But, for the reasons stated, we think the case was tried on the theory that defendant was the keeper of a disorderly house. A house of ill fame would doubtless be a disorderly house, but it does not follow that a disorderly house is necessarily a house of ill fame. The statute before quoted refers only to a house of ill fame. It is conceded that criminal statutes are to be strictly construed. Appellee says, however, that Sec. 4944 does not define a crime, but simply establishes a rule of evidence. But we are of opinion that to admit evidence under the statute permitting

such evidence as to a house of ill fame is not permissible in a prosecution for keeping a disorderly house, and that the trial court erred in admitting such evidence.

2. The trial court did not err in permitting the State to show in rebuttal by the chief of police statements made by witness Gail Myers to him. His evidence was competent as impeaching testimony. The statements testified to by the chief of police were as to previous statements contradictory to and inconsistent with her testimony which she had given in chief. It is true that such evidence, if it could have been obtained, would have been competent in chief; but evidence in rebuttal which is competent as impeaching testimony should not be excluded because tending to support the plaintiff's main case. *Rhomberg v. Avenarius*, 135 Iowa 176. The trial court has a discretion as to the order of proof and, as a rule, it is the better practice for a plaintiff to make out his case in chief and put in all his evidence. It should not be split up and a part of the testimony put in in rebuttal. But under the circumstances in the instant case, we are unable to see how the impeaching testimony of the witness, Gail Myers, could have been used by the State in chief unless the State had called her as its witness.

*2. WITNESSES: impeachment: contradictory statements: rebuttal.*

For the reasons stated, the judgment is reversed and the cause remanded for further proceedings in harmony with this opinion.—*Reversed and Remanded.*

EVANS, C. J., DEEMER and WEAVER, JJ., concur.